## A01A0502. GEORGIALINA ENTERPRISES, INC. v. FRAKES et al.

(551 SE2d 95)

Pope, Presiding Judge.

Lawrence and Patricia Frakes bought a car wash from Georgialina Enterprises, Inc. and partially financed the purchase by borrowing $100,000 from the sellers, evidenced by a purchase money promissory note and a deed to secure debt on the property. Six months later, Sunset Landings, Inc., a corporation formed by Mr. Frakes, entered into a promissory note in favor of Georgialina, which stated that it "superseded" the earlier note but that it was secured by the same deed to secure debt. The main issue on appeal is whether the second note functioned as a complete novation of the earlier note and thereby also nullified the deed to secure debt so that Georgialina no longer has any rights against the Frakeses or the property.

Sunset Landings signed the second note in 1996. Two years later after Georgialina concluded that someone failed to make payments, it issued a demand letter to the Frakeses in which it purported to accelerate the balance due. In response, the Frakeses filed suit against Georgialina and Wayne Raiford, its president, alleging that they fraudulently induced the Frakeses into buying the car wash. Georgialina and Raiford answered and counterclaimed on the note and for fraud in connection with a lakefront lot that was allegedly part of the consideration for the sale. They then sought summary judgment on the Frakeses' claims and on their first counterclaim, i.e., the note. In response, the Frakeses amended their complaint to assert that the first note had been "extinguished, superseded and discharged" by the second note and that the deed to secure debt should be cancelled. The Frakeses then filed a cross-motion for summary judgment on the same issues. The Frakeses later dismissed their fraud claim against Georgialina, but not against Raiford.

The trial court held that the second note was a novation of the first and that it fully discharged the Frakeses from any obligation to Georgialina. The court then held that the deed to secure debt had "answered the object of its creation and, as a matter of law, must be canceled." The court also found no evidence of fraud by Raiford. Accordingly, the court granted partial summary judgment in favor of the Frakeses on Georgialina's counterclaim on the note and in favor of Georgialina on the Frakeses' claim of fraud. Georgialina appeals the judgment on the note. The court did not rule on Georgialina's second counterclaim and therefore that claim remains pending below.

In ten enumerations of error, Georgialina essentially contends that there are issues of fact and that the court erred by finding a novation of the note and by finding that a novation of the note would affect the security agreement. "It is well established that on appeal of a grant of summary judgment, the appellate court must determine

whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence." (Citation and punctuation omitted.) *Dumas v. Tripps of North Carolina*, 229 Ga. App. 814 (495 SE2d 129) (1997). See also OCGA § 9-11-56 (c).

The undisputed facts show that the Frakeses purchased the property in 1995 with financing from a bank and from Georgialina. The bank took a superior security interest in the property, and Georgialina took a secondary position. The Frakeses were the promisors on the first note to Georgialina. Within months of the purchase, the Frakeses had difficulty making ends meet at the car wash. So, the Frakeses approached Raiford to negotiate a reduced interest rate on the note. Raiford agreed to reduce the rate from ten percent per year to eight. Frakes had his wife type the new note, and, at his instruction, she made it show Sunset Landings as the promisor. When asked if he told Raiford that he was changing the promisor, Frakes responded, "No. He read the thing before he signed it." This statement directly confirms Raiford's statement in his affidavit that, prior to signing the second note, he never discussed that Georgialina would release or discharge the Frakeses or give up the security in the property.

The great majority of the second note is identical to the first; it is fairly obvious that the first was copied to make the second. Indeed, Mrs. Frakes, who handles all of the accounting and bookkeeping for the couple and their corporation, stated that she used the existing promissory note to type the second and that the second was a verbatim copy of the first. The only significant differences are that the second note: (1) states that it "Supersedes Note dated 6/23/95"; (2) includes the lower interest rate and specifies a monthly payment that is less than what the lower rate would require, but establishes a balloon payment to make up the difference; (3) indicates that the principal amount of $98,000 equals the remaining balance on the first note; (4) is signed by Lawrence A. Frakes as president of Sunset Landings; and (5) is also signed by Raiford as president of Georgialina. *Both* notes have the following language about security: "This Note is secured by a Deed to Secure Debt dated June 23, 1995 executed by the undersigned in favor of the holder herein, conveying the property described on Exhibit 'A' attached hereto and which is more fully described in said Deed to Secure Debt."[1] And both notes contain a homestead exemption provision that obviously relates to the secured property.

---

[1] The second note omits the words "on Exhibit 'A' attached hereto."

Mrs. Frakes did not sign or consent to the second note. When questioned about the purpose of the second note, she explained that the only intended change was the interest rate reduction:

Q: Do you know who prepared the note?
A: I did.
Q: And it appears to be a note executed by or, at least it has a name on there of, Sunset Landings, Incorporated.
A: Yes.
Q: Were you intending to make a change in the promissory note, other than the interest rate?
A: No, sir.

Also,

Q: And it has your husband's signature above the name Sunset Landings, Inc. and I think the word president around there somewhere.
A: Yes, sir.
Q: Was it your intention or your understanding that the corporation was being substituted for you and your husband individually?
A: No.

Again,

Q: Did you have a discussion, Ms. Frakes, with your husband about what the purpose of [the second note] was?
A: Yes.
Q: You actually prepared the note?
A: Yes.
Q: And what was your discussion with your husband about what the purpose of [the second note was]?
A: To lower the interest rate.

Mr. Frakes testified that it was his intent to release himself and his wife from the obligation and put the obligation on the corporation instead. But, he also stated, "The only reason I had [the second note] prepared was to lower the interest rates." When asked why the second note showed Sunset Landings as the promisor, Mr. Frakes responded, "Because Sunset Landings wasn't in effect at the time that we signed the original note to Mr. Raiford. It was in process, but we hadn't got the approval from the State for our corporation." He also said, "We operate Sunset Landings exclusively for the car washes. So that's why I have it signed as Sunset Landings and I signed it. This is owned by Sunset Landings." Yet, the Frakeses remain the obligors on the debt to the bank, and the bank apparently

retains its security interest in the property as owned by the Frakeses. Also, the Frakeses never transferred any interest in the car wash to Sunset Landings. Mr. Frakes stated in an affidavit that "Sunset Landings, Inc. has never had any legal or equitable interest in the Property." Finally, in their verified pleadings, the Frakeses stated that they continued to make payments, personally, for at least three months after the second note was signed.

The Frakeses are not lawyers. Construed in favor of Georgialina, both Mr. and Mrs. Frakes' testimony supports the inference that the only reason they put Sunset Landings on the second note was simply because they had established a corporation in the time between the two notes. And they thought that this simple fact meant that they should sign the note as the corporation even though they still understood that they were personally responsible for the loan and that the loan was still secured by the property. Given that the second note states that it supersedes the earlier note but that it also says it is subject to the same security interest, the note is ambiguous. The Frakeses may have used the word "supersede" to simply mean that the new interest rate and payment terms superseded those of the first note and that they intended all other aspects of the obligation to remain the same including the promisors and/or the security. Further, Mr. Frakes' statement that he intended to release his wife and himself from obligation is contradicted by his and his wife's testimony that they intended only to change the interest rate. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1) (343 SE2d 680) (1986).

The relevant law of novation follows:

A novation or accord and satisfaction is in itself a contract and must have all the elements of a de novo contract. Therefore, there must be a meeting of the minds if the novation or accord and satisfaction is to be valid and binding. In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, [and] (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation. Thus, it must appear that the person substituted for the debtor was, by agreement between the creditor, the debtor, and himself, substituted for the original debtor, who was released from the promise. In other words, it must be shown that the person substituted as the debtor in the place of the person released[ ] became such as the result of an agreement in which all three concurred.

(Citations and punctuation omitted.) *Griffiths v. Phenix Supply Co.*,

192 Ga. App. 651-652 (1) (385 SE2d 789) (1989). Further, "[t]he question of the parties' mutual intention for an accord and satisfaction or novation is ordinarily a question of fact reserved for jury determination." *Feely v. First American Bank of Ga.*, 206 Ga. App. 53, 56-57 (2) (b) (424 SE2d 345) (1992). And parol evidence is admissible when determining whether a novation has occurred. *Farmers & Merchants Bank &c. v. Rogers*, 55 Ga. App. 38 (1) (189 SE 274) (1936).

The evidence in this case shows that, at a minimum, there are issues of fact regarding whether the parties intended for the second note to extinguish the security interest. See *Williams v. Rowe Banking Co.*, 205 Ga. 770 (55 SE2d 123) (1949). In *Williams*, the Supreme Court held that a second note issued by a third party in lieu of the note by the original promisor, which left unchanged the security deed executed by the original promisor, was only a change in one of the terms of the original contract. It changed the source of payment, but not the associated security deed. Id. at 771-772. And, here, there may also be a question of mutual mistake regarding having Sunset Landings be the promisor on the second note. See *Fox v. Washburn*, 264 Ga. 617, 618-619 (2) (449 SE2d 513) (1994) (failure to read contract does not necessarily preclude a claim of mutual mistake of fact). Therefore the court erred in finding that there were no issues of material fact and in finding a novation as a matter of law.

*Judgment reversed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JUNE 28, 2001.

*Richard E. Miley*, for appellant.
*William A. Trotter III*, for appellees.