## A09A0740. ASGHARNEYA et al. v. HADAVI et al.

(680 SE2d 866)

BERNES, Judge.

This case involves a dispute between appellant Asghar Asgharneya and appellee Javad Hadavi following the demise of their joint business. After a bench trial, the trial court entered a judgment in favor of Hadavi for breach of contract and civil conspiracy and awarded him lost profit damages and attorney fees. On appeal, Asgharneya argues that the trial court misconstrued the nature of the parties' business relationship and the obligations that each owed to the other pursuant to their oral agreement. He further argues that the evidence was insufficient to support the trial court's finding of civil conspiracy and that the award of attorney fees was unwarranted. We find no error and affirm.

> While we apply a de novo standard of review to any questions of law decided by the trial court, factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. OCGA § 9-11-52 (a). Because the clearly erroneous test is in effect the same standard as the any evidence rule, appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them.

(Citations and punctuation omitted.) *Lifestyle Home Rentals v. Rahman*, 290 Ga. App. 585 (660 SE2d 409) (2008).

The evidence presented during the bench trial showed that in 2001, Asgharneya and Hadavi, who had been long-time family friends, decided to open a check cashing business together. They jointly formed a corporation for the business, which they named El Exito Cambio De Cheques ("El Exito"), and leased a small space within a convenience store owned by Wilson and Diana Quiceno, in which they constructed a small check cashing booth. They began operating their business in September 2001.

They each invested equal capital contributions to get the business running. They also agreed from the outset that all profits and expenses of the business would be split 50/50. No written documents evidenced their agreements; their business dealings were based

YALE LAW LIBRARY

solely upon the verbal communications of the two men.

Although both parties worked at El Exito, it became clear after several months that Asgharneya was able to spend more time at the store than Hadavi. Consequently, the parties agreed that Asgharneya would receive a salary of $500 per week, to be paid prior to the split of the profits between the parties. The business grew and gradually generated profits averaging $100,000 per year. In accordance with their agreement, Asgharneya and Hadavi split the profits equally.

Beginning in May 2004, mostly for scheduling reasons, Asgharneya and Hadavi decided to change the way that they did business. It is undisputed that the men agreed that they would alternate the months that each ran and operated the business, with each man paying all expenses and keeping all profits in their respective months. In other words, during Asgharneya's month to operate the business, he alone would work the check cashing booth, pay all of the expenses, and keep all of the profits obtained during that month. Likewise, in the alternating month, Hadavi would operate the booth, pay the expenses, and keep the profits during his assigned month.

In order to effectuate this modified agreement, the parties set up their own corporations and opened separate bank accounts for each to use during his respective month operating the business. They further agreed to close out the joint bank account that they had previously used and to distribute equally the remaining balance. The men also met and explained their new arrangement with the landlord, Mr. Quiceno. Although their lease had expired in December 2003, Mr. Quiceno agreed to continue the lease agreement indefinitely on a month-to-month basis. He stated no objection to the new scheduling arrangement.

Pursuant to their agreement, Asgharneya was to operate the business during the month of May. And, although the agreement called for alternating single months, the parties arranged for Asgharneya to also work during the month of June, since Hadavi had to be traveling at that time. In exchange, Hadavi was going to operate the business during the months of July and August.

As planned, Asgharneya operated El Exito exclusively during the months of May and June 2004. But when Hadavi arrived to run the business in July, he learned that Mr. Quiceno, in concert with Asgharneya, had boarded up the check cashing booth, blocked its access with merchandise racks, and hung signs indicating that the business was closed for remodeling, even though no remodeling was actually taking place. Mr. Quiceno further refused to accept Hadavi's rent check and instituted eviction procedures against him. Finally, Mr. Quiceno presented Hadavi a letter that Asgharneya had secured from an attorney stating that Asgharneya's and Hadavi's business partnership had terminated.

Hadavi nonetheless went to El Exito on a daily basis during the month of July 2004 in an attempt to run his check cashing business. In violation of their agreement, however, Asgharneya, with the help and support of Mr. Quiceno, began occupying a space near Mr. Quiceno's cash register and actively soliciting the check cashing customers away from Hadavi. Asgharneya continued to run his rival business in the store throughout the month of July, at which time Mr. Quiceno's eviction proceedings forced Hadavi to leave the premises. Asgharneya then continued to operate the business out of Mr. Quiceno's store on a full-time basis, without ever compensating Hadavi in any way.

In January 2006, Hadavi filed the instant lawsuit against Asgharneya and El Exito, asserting breach of contract, unjust enrichment, civil conspiracy, and entitlement to attorney fees.[1]

Following a bench trial, the court held that the parties had agreed to modify their original agreement to operate the check cashing business on an alternating month-to-month basis, and not to terminate their business relationship as had been argued by Asgharneya. The trial court expressly rejected Asgharneya's argument that the closing of the parties' joint bank account and distribution of those funds evidenced a termination of their business relationship, as opposed to a reimbursement of their original investment amount consistent with their new business arrangement. Finally, the trial court concluded that Asgharneya breached his modified agreement with Hadavi when, in July 2004, he began operating a rival business within the Quicenos' store and continued to operate the check cashing business from that location to the exclusion of Hadavi; was unjustly enriched when he obtained and kept the profits of El Exito during the months that Hadavi was supposed to be operating the business; and committed civil conspiracy when, in concert with Mr. Quiceno, he prevented Hadavi from operating the check cashing business and interfered with his ability to do so. The trial court awarded Hadavi lost profit damages and attorney fees.

1. Asgharneya contends that the trial court erred by failing to conclude that the parties agreed to terminate their business relationship and to operate separate and independent businesses when they modified their arrangement in May 2004. He argues specifically that the modified agreement was a novation of the original agreement which had the effect of extinguishing in its entirety their business partnership and replacing it with a new arrangement in

---

[1] Hadavi also successfully sued the Quicenos for, inter alia, tortious interference with business relations and civil conspiracy, but the Quicenos are not party to the present appeal.

which they agreed only to share the use of the leased space. We disagree.

We note at the outset that Asgharneya's assertion that this issue is solely a question of law to which we owe no deference to the trial court's ruling lacks merit, as illustrated by the analysis that we must undertake in order to address his novation argument. "A novation is a complete contract within itself, and has four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, (4) the validity of the new one." (Citation and punctuation omitted.) *Farris v. Pazol*, 166 Ga. App. 760, 762 (1) (305 SE2d 472) (1983). As with any contract, a meeting of the minds is an essential element of a valid and binding novation. *Georgialina Enterprises v. Frakes*, 250 Ga. App. 250, 253 (551 SE2d 95) (2001). And significantly, the question of whether the parties mutually intended a novation is ordinarily a question reserved for the trier of fact. Id. at 254; *Mayer v. Turner*, 142 Ga. App. 63, 63-64 (1) (234 SE2d 853) (1977).

Since all of the dealings between the parties here were verbal, and since the parties strongly dispute the intent behind and the effect of their modified business agreement, the resolution of that issue lay exclusively with the trial court as the trier of fact. *Georgialina Enterprises*, 250 Ga. App. at 253; *Mayer*, 142 Ga. App. at 63-64 (1). And, Asgharneya's testimony alone supports the trial court's determination that the parties did not mutually intend to terminate their business relationship. Asgharneya admitted that the motivation behind the modification of their arrangement was to provide him with more flexibility in his schedule. He further admitted that under the modified agreement, both he and Hadavi each retained the right to operate El Exito, in its original location, and to keep the profits derived from the business for six months out of every year. To the extent that Asgharneya argued that the closing of the parties' joint account evidenced a termination of the parties' business relationship, the trial court, as the trier of fact, was entitled to resolve the conflict in the parties' testimony against Asgharneya. See *Jenkins v. Gulf States Mtg. Co.*, 138 Ga. App. 835, 838 (227 SE2d 522) (1976).

2. Asgharneya's arguments that the modified agreement was unenforceable for want of consideration and constituted an invalid partnership were not argued or considered by the trial court and are therefore waived. See *Peach Consolidated Properties v. Carter*, 278 Ga. App. 273, 276 (1) (628 SE2d 680) (2006) (arguments raised for the first time on appeal will not be considered).

3. Asgharneya next argues that the trial court erred by failing to excuse him from liability for nonperformance of the modified agreement pursuant to the terms of OCGA § 13-4-23. "If the nonperfor-

mance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." Id. Asgharneya contends that Hadavi's conduct caused his nonperformance. The trial court held as a matter of fact, however, that it was the joint conduct of Asgharneya and Mr. Quiceno that resulted in Hadavi's inability to perform under the modified agreement of the parties, not vice versa. The record evidence is more than sufficient to support the trial court's conclusion on this point.

4. Asgharneya further asserts that the modified agreement between himself and Hadavi was for an infinite duration and its failure to include a time frame rendered it unenforceable. He argues, therefore, that he could not be liable for breaching an unenforceable contract.

Asgharneya's argument is misguided. He correctly observes that a partnership formed pursuant to an oral agreement and for an indefinite duration is terminable at will by either partner. See *Arford v. Blalock*, 199 Ga. App. 434, 437 (6) (405 SE2d 698) (1991). But that does not equate to the right of one partner to unilaterally terminate the partnership in contravention of the partnership agreement or through other wrongful conduct. Id. at 437-438 (6).

> Any partnership agreement includes, as a matter of law, an agreement for each partner to act in "the utmost good faith" toward the other partner. See OCGA § 23-2-58. The power of a partner to dissolve the partnership at will, like any other power held by a fiduciary, must be exercised in good faith. A partner may not "freeze out" a co-partner and appropriate the business to his own use. A partner may not dissolve a partnership to gain the benefits of the business for himself, unless he fully compensates his co-partner for his share of the prospective business opportunity. Even though a partner has a right to dissolve the partnership, if . . . it is proved that the partner acted in bad faith and violated his fiduciary duties by attempting to appropriate to his own use the new prosperity of the partnership without adequate compensation to his co-partner, the dissolution would be wrongful and the partner would be liable . . . for violation of the implied agreement not to exclude the other partner wrongfully from the partnership business opportunity.

(Citation and punctuation omitted.) Id. at 437-438 (6).

The record here supports the trial court's determination that Asgharneya terminated his partnership with Hadavi through wrong-

ful conduct and without adequate compensation, and further that he appropriated the continued profits from their joint business to his own use. The trial court's damage award was therefore warranted. *Arford*, 199 Ga. App. at 438 (7). See also OCGA § 14-8-38 (b) (1) (B).

5. Asgharneya contends that the trial court erred in finding that Asgharneya committed civil conspiracy by working in concert with Mr. Quiceno to prevent Hadavi from operating the business and to interfere with his attempts to do so. Under Georgia law, "a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury." OCGA § 51-12-30. See *Arford*, 199 Ga. App. at 440-442 (13). In essence, Asgharneya argues that the evidence was insufficient to conclude that he and Mr. Quiceno engaged in a conspiracy and, even if they had, Mr. Quiceno had a legal right to evict Hadavi and therefore any conspiracy is not actionable.

First, the trial court's finding that Asgharneya, with the support and encouragement of Mr. Quiceno, began operating a rival business during Hadavi's month to manage El Exito, while actively soliciting customers away from Hadavi, is fully supported by the record. Second, the wrongful conduct described above was undertaken independent of Mr. Quiceno's action to evict Hadavi, whether or not Mr. Quiceno was legally entitled to do so.

6. Finally, Asgharneya argues that the trial court's award of attorney fees pursuant to OCGA § 13-6-11 was improper because there was a bona fide controversy and no evidence of bad faith. See, e.g., *Lexmark Carpet Mills v. Color Concepts*, 261 Ga. App. 622, 626 (2) (583 SE2d 458) (2003) ("[W]here a bona fide controversy exists, attorney fees may be awarded under OCGA § 13-6-11 only where the party sought to be charged has acted in bad faith in the underlying transaction.") (citation and punctuation omitted).

We need not address whether a bona fide controversy existed between the parties because the record contained sufficient evidence of bad faith to support the trial court's award. See *Tattersall Club Corp. v. White*, 232 Ga. App. 307, 312 (2) (501 SE2d 851) (1998) ("[E]vidence of dishonesty in [a] business transaction will support an attorney fees award.") (footnote omitted). The trial court's factual findings — that Asgharneya breached the parties' modified agreement by operating a rival business within the Quicenos' store while conspiring with Mr. Quiceno to divert customers to himself and away from Hadavi, and, once Hadavi had been successfully evicted, continuing to operate the business from the original location while retaining all of the profits derived therefrom to the exclusion of Hadavi — justified the trial court's award of attorney fees. See

generally id.; *Morrison Homes of Fla. v. Wade*, 266 Ga. App. 598, 600-601 (2) (598 SE2d 358) (2004); *Dept. of Transp. v. Hardin-Sunbelt*, 266 Ga. App. 139, 146 (4) (596 SE2d 397) (2004).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 2, 2009.

*Hernan, Taylor & Lee, Christopher C. Taylor, Brennan T. Bair, Erik J. Meder, Fred L. Cavalli*, for appellants.
*Susan B. Shaw, Jeffrey L. Shaw*, for appellees.