A11A1528. HADLEY et al. v. COUNTRYWIDE HOME LOANS, INC. et al.

(727 SE2d 183)

BARNES, Presiding Judge.

William Hadley and Wendy Hadley, pro se, appeal the trial court's denial of summary judgment to them and grant of summary judgment to Countrywide Home Loans, Inc., Bank of America Corporation, and BAC Home Loans Servicing, LP (hereinafter "Countrywide," unless specifically referencing the separate entity), in this case involving cross-claims for breach of contract. They argue that these entities lack standing, and that under a settlement agreement, their duty to make monthly payments for private mortgage insurance ("PMI") to be held in escrow was waived by agreement. For the reasons that follow, we affirm in part and reverse in part the trial court's summary judgment ruling.

> When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Footnotes omitted.) *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004). See OCGA § 9-11-56 (c).

Reviewed in this context, the record reflects that in November 2005, the Hadleys obtained an adjustable rate mortgage loan from Countrywide for $244,800. Under its terms, the Hadleys were to make monthly interest-only payments of $1,326 for ten years as well

as monthly payments for insurance and taxes to be held in escrow. In 2006, the Hadleys filed suit in federal court against Countrywide seeking to rescind the loan and alleging that it was originated in violation of the federal Truth in Lending Act, 15 USC § 1601 et seq.

In May 2007, the parties entered into a "Confidential Settlement Agreement and Release of Claims and Potential Claims," in which Countrywide agreed to change the Hadleys' loan to a fixed rate of 6.5 percent in exchange for the couple's agreement to dismiss with prejudice the federal action. The settlement also provided that, after a four-month payment suspension period, the Hadleys

> will make all suspended payments to Countrywide and Countrywide will modify the terms of [the] Loan . . . . After modification, [the] Loan . . . will conform to the following terms: (a) a fixed interest rate of 6.5%; and (b) *waiver of the escrow requirements* set forth in Section 3 of the security deed securing payment of [the] Loan . . . subject to the condition that the Hadleys will resume making escrow payments as set forth in Section 3 of the security deed if the Hadleys should fail to timely make any other payments required under the loan documents.

(Emphasis supplied.) The Hadleys also entered into a "Suspended Payment Agreement" in which Countrywide agreed to suspend the couple's mortgage payments for the months of May, June, July, and August 2007, after which "[on] September 10, 2007 Countrywide will offer to *modify your Loan on terms set forth in the Confidential Settlement Agreement* and Release of Claims and Potential Claims, to which this Suspended Payment Agreement is attached." (Emphasis supplied.) The Suspended Payment Agreement further "incorporate[d] in full all terms of the Confidential Settlement Agreement."

In a November 30, 2007, letter to the Hadleys' attorney, Countrywide's attorney expressed frustration that the parties were having difficulty negotiating the terms of a loan modification agreement per the settlement agreement. The letter also said:

> As previously discussed, while Countrywide has waived escrow requirements, it is not practical to require the Hadleys to purchase their own mortgage insurance ("PMI"). Therefore, the Hadleys' monthly payments will also include PMI. Once PMI is included, the Hadleys' total monthly payment during the interest-only period of the loan will be $1,515.42. In 2016 and afterwards until maturity in December 2035, the Hadleys will make monthly payments of

interest *and* principal in the amount of $1,659.08. Adding in PMI, the Hadleys' total monthly payment during this time will be higher than is shown on the enclosed documents, specifically the total monthly payment will be $1,785.56.

The attorney further directed that he should be contacted "if you or your clients object to any portion of the revised loan modification agreement."

In December 2007, the Hadleys entered into a "Loan Modification Agreement" (hereinafter "the Agreement") with Countrywide, under which they were to make interest-only payments of $1,388.94 per month beginning on January 1, 2008 until January 1, 2016, followed by principal and interest payments of $1,659.08 per month until the loan matured on December 1, 2035. The Agreement also provided that the "Borrower will comply with all other covenants, agreements and requirements of the Security Instrument, including . . . the Borrower's covenants and agreements to make all payments of . . . escrow items."

Countrywide accepted the Hadleys' payments of $1,388.94 from January 2008 to November 2008, then on December 9, 2008, rejected and returned the Hadleys' check for the same amount. Countrywide thereafter rejected and returned the Hadleys' next three mortgage checks, which were dated January 2, 2009, February 1, 2009, and February 19, 2009. On March 25, 2009, the Hadleys filed the underlying "Complaint for Injunction from Foreclosure, Enforce Loan Modification Agreement and Equitable Relief" against Countrywide, alleging that it breached the Agreement by rejecting four of the Hadleys' loan payments, after which they set aside the rejected payments into a separate account for Countrywide's benefit and would continue to do so.

Countrywide answered and admitted rejecting some of the Hadleys' payments that were allegedly untimely or insufficient. It also counterclaimed for breach of contract and sought payment of amounts due under the adjusted loan. The Hadleys amended their complaint to add Bank of America Corporation as a defendant because the bank had acquired Countrywide Financial Corporation, and the mortgage company was a subsidiary of Countrywide Financial Corporation. The parties were unsuccessful in several attempts to settle the case, and Countrywide thereafter filed a motion for summary judgment.

In support of its motion, Countrywide argued that it was undisputed that the Hadleys owed $1,388.94 in interest payments each month and had not paid Countrywide since March 2009. It further argued that no evidence supported the Hadleys' contention that the PMI had been waived. Countrywide also filed a motion to add BAC

Home Loans Servicing, LP, a subsidiary of Bank of America Corporation and the servicer of the loan, as a party to the action and counter-claimant for the breach of contract action, which the trial court granted.

The Hadleys responded to Countrywide's motion for summary judgment and filed a cross-motion for summary judgment, contending that Countrywide lacked standing because BAC Home Loans was the real party in interest. They also argued the Agreement clearly modified the original loan by waiving all escrow requirements. Thus, they contended, Countrywide breached the Agreement by rejecting their payments of $1,388.94. Following a hearing, the trial court granted Countrywide's motion and denied the Hadleys' motion, finding that Countrywide did not breach the Agreement because the amounts the Hadleys tendered were insufficient because they did not include payments for PMI premiums, for which the Hadleys remained "contractually obligated to pay."

1. On appeal, the Hadleys claim that Countrywide, Bank of America Corporation, and BAC Home Loans Servicing, LP, lacked standing to maintain a motion for summary judgment. They contend that Countrywide and Bank of America lacked standing because their note was assigned to Federal National Mortgage Association ("Fannie Mae"), and also contend that BAC was not a real party in interest because it was merely a servicing agent.

"The real party in interest is the person who, by the substantive governing law, has the right sought to be enforced." (Citation and punctuation omitted.) *Allianz Life Ins. Co. &c. v. Riedl*, 264 Ga. 395, 398 (3) (444 SE2d 736) (1994). In *McCray v. Fed. Nat. Mtg. Assn.*, 292 Ga. App. 156, 159 (1) (663 SE2d 736) (2008), we recognized that both the owner of money due under mortgage and its loan servicer *may* have standing to sue for deficiencies. Id., citing *Bankers Trust v. 236 Beltway Investment*, 865 FSupp. 1186, 1191 (E.D. Va. 1994).

In this case, the record indicates that after the Hadleys obtained the adjustable rate loan with Countrywide in November 2005, Fannie Mae "became the investor on the Hadleys' loan" in December 2005. Countrywide Home Loans Servicing continued to service the Hadleys' loan after Fannie Mae acquired it, and when Bank of America acquired Countrywide in 2008, Countrywide Home Loans Servicing changed its name to BAC Home Loans Servicing and apparently continued to service the Hadleys' loan.

Regarding the Hadleys' real-party-in-interest defense related to each individual entity — Countrywide, Bank of America Corporation, and BAC Home Loans Servicing — although Countrywide and the Hadleys were the original parties to the settlement agreement, the record does not reflect whether Countrywide currently has the right

to enforce the Agreement's terms after Fannie Mae acquired the Hadleys' loan in 2008. The record is unclear as to whether all rights related to the Hadleys' loan were assigned to Fannie Mae or whether Countrywide retained some interest. Likewise, regarding BAC Home Loans Servicing, per the Hadleys' security deed, the loan servicer collects the payments due under the note and performs other loan servicing obligations. The deed further provides that the servicing obligation remains with the loan servicer "not the Note purchaser unless otherwise provided by the Note purchaser," and also that if there is a change in the loan servicer "the Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing."

Summary judgment is appropriate only when the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). OCGA § 9-11-17 (a) provides, in pertinent part, that "[e]very action shall be prosecuted in the name of the real party in interest."

Here, Countrywide and Appellees have failed as a matter of law to establish their status as the holders of an interest in the Agreement, despite the Hadleys' allegation that their loan had been assigned to Fannie Mae. Further, other than the bank's averment that servicing of the loan was transferred to BAC Home Loans Servicing, the record does not include written notice of the transfer of service or any other documentation of a servicing agreement between the Hadleys and BAC Home Loans Servicing.

To prevail on its motion for summary judgment, Countrywide, as movant, had the burden of "establishing the non-existence of any genuine issue of fact," including the Hadleys' assertion that Countrywide is not the real party in interest, and "all doubts are to be resolved against [Countrywide]." (Citation and punctuation omitted.) *Sawgrass Builders v. Key*, 212 Ga. App. 138 (1) (441 SE2d 99) (1994); see *Rigdon v. Walker Sales &c.*, 161 Ga. App. 459, 462 (288 SE2d 711) (1982) ("[W]here it appears from the contract itself that the original seller . . . assigned all its rights, title and interest in said contract to an assignee . . . , the assignee is the real party in interest.").

Accordingly, because there were genuine issues of material fact as to whether Countrywide and Bank of America Corporation retained an interest in the loan modification agreement after Fannie Mae became an "investor" in the loan, and whether, per the servicing

agreement, BAC had the right to take action against the Hadleys, the trial court erred in granting Countrywide's motion for summary judgment.

2. The Hadleys also contend that the trial court erred in finding as a matter of law that Countrywide did not breach the loan modification agreement by refusing to accept their payments of $1,388.94. They argue that the agreement is binding and enforceable under the law, and that it clearly provided that the escrow requirements in the original security deed would be waived.

The Hadleys maintain that the loan modification amount reflected the terms reached in the Settlement Agreement that the escrow requirement would be waived. They argue that Countrywide breached the terms of the Settlement Agreement by rejecting their payments for the agreed-upon amount of $1,388.94. Countrywide contends that the Settlement Agreement containing the waiver of escrow was merely an "agreement to agree" and that the loan modification did not contain any provisions waiving the Hadleys' escrow obligations, and the parties agreed that the Hadleys would continue to make escrow payments to cover PMI. It also asserts, in the alternative, that even if there were a waiver, when the Hadleys missed a payment in May 2008, under the terms of the Settlement Agreement, the couple was required to resume paying all escrow items.

> Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense.

(Citations and punctuation omitted.) *Wilkins v. Butler*, 187 Ga. App. 84, 85 (369 SE2d 267) (1988). Thereby, "[a]n answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort." (Citations and punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 698 (446 SE2d 199) (1994). A purported acceptance of a settlement offer which imposes conditions or otherwise varies the offer will be construed as a counteroffer to the offer. Id. See also *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 750 (1) (525 SE2d 118) (1999) (meeting of the minds and mutual assent can be found only when the acceptance of an offer was unconditional, unequivocal, and without variance of any sort).

Contrary to Countrywide's contention that there was no enforceable settlement agreement, per the explicit language of paragraph 5 of the Agreement, in exchange for the Hadleys dropping their federal civil action with prejudice, Countrywide agreed to modify the couple's original loan to "conform to the following terms: (a) a fixed interest rate of 6.5%; and (b) waiver of the escrow requirements set forth in Section 3 of the security deed." Further, the Agreement stipulated that "[t]he documents necessary to effectuate the loan modification described in paragraph 5 will be delivered to Countrywide and executed by [the Hadleys] prior to the end of the four-month . . . period described in paragraph 5."

Additionally, the Agreement stated that "if the facts with respect to this [S]ettlement [A]greement, or upon which this [S]ettlement [A]greement is based, are found hereafter to be other than or different from the facts now believed to be true," then "this [S]ettlement [A]greement shall be and remain effective, notwithstanding such difference in facts." The Settlement Agreement was not an agreement to agree as argued by Countrywide, but the acceptance of an offer that was unconditional and unequivocal — 6.5 percent interest and waiver of escrow. Consequently, the Settlement Agreement was binding and enforceable against Countrywide, or its assignee, and its terms were not superseded by the parties' loan modification agreement. "Any change in the nature or terms of a contract is called a 'novation' [and] such novation, without the consent of the surety, discharges him." OCGA § 10-7-21. The question of whether the parties mutually intended a novation is ordinarily a question reserved for the trier of fact. *Georgialina Enterprises v. Frakes*, 250 Ga. App. 250, 254 (551 SE2d 95) (2001).

Thus, the trial court erred in finding as a matter of law that Countrywide did not breach the loan modification agreement by refusing to accept the Hadleys' payment, and finding that the Hadleys breached the loan modification agreement by refusing to make the PMI payments. Accordingly, the grant of summary judgment to Countrywide was in error.

Countrywide also maintains that per the loan modification agreement, the Hadleys were required to pay all escrow items, and that even if the requirement was waived, under the Security Deed, the waiver could be revoked at any time. The Security Deed provides, in pertinent part, that "Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time," and that "lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15." Section 15

provides that the waiver revocation notice be in writing, and mailed or delivered to the borrower at the property address unless another address is designated.

Although the record reflects that Countrywide's attorney communicated with the Hadleys' attorney that despite the earlier "waive[r] of escrow requirements" the monthly payments would include PMI, genuine issues of material fact exist as to whether his communication evinced a revocation of the waiver and written notice to the Hadleys as required by the Security Deed.

Countrywide contends that even if there were a legitimate waiver of escrow, the Hadleys missed the May 2008 loan payment, which triggered an automatic provision in the Settlement Agreement requiring an immediate resumption of escrow payments. The record reflects, however, that after the Hadleys purportedly missed the May payment, Countrywide continued to accept the Hadleys' payments for the next six months, rather than rejecting the payments outright because the amount did not include the PMI. Thus, there exists a jury question as to whether by accepting the payments without the PMI Countrywide waived the provision requiring resumption of escrow payments. "A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights." (Citation and punctuation omitted.) *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989). Whether the party's conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury. Id.

Likewise, because there are genuine issues of material fact as to whether after missing a loan payment the Hadleys were required per the Settlement Agreement to resume escrow payments, the trial court did not err in denying their motion for summary judgment.

*Judgment affirmed in part and reversed in part. Adams and Blackwell, JJ., concur in judgment only.*

DECIDED MARCH 30, 2012.

William Hadley, *pro se.*
Wendy Hadley, *pro se.*
*Hunton & Williams, Charlotte M. Ritz, Lawrence J. Bracken II,* for appellees.