## A01A0877. CONNER v. HART.
### (555 SE2d 783)

RUFFIN, Judge.

Donna Joann Conner sued her business partner, Joseph Hart, for breach of fiduciary duty, fraud, attorney fees, and punitive damages. The case proceeded to trial, and the trial court granted Hart a directed verdict on each of these claims at the close of Conner's case. Conner appeals, and for reasons that follow, we affirm.

In reviewing the grant or denial of a motion for directed verdict, we apply the "any evidence" test and construe the evidence most favorably to the party opposing the motion.[1] Under this standard, "[a] directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[2]

Viewed favorably to Conner, the evidence shows that Conner and Hart formed two separate partnerships to own and operate two Subway Sandwich Shops, one in Alpharetta and the other in Lavonia. When Hart approached Conner in 1991 about partnering with him on the Alpharetta store, she initially declined. Ultimately, however, she decided to enter the partnership. The parties agreed that Hart would hold a 50 percent partnership interest, Conner would hold a 35 percent interest, and 15 percent of the profits would be reserved for emergencies or a future store. The parties further agreed that Hart would be responsible for developing, designing, and constructing the store, while Conner would handle its daily operations.

Before the Alpharetta Subway opened in June 1993, Conner gave Hart a general power of attorney relating to the store, which empowered him "to do, execute, and perform any act, matter, or thing whatsoever . . . which, in the opinion of [Hart], ought to be done, executed or performed." The power of attorney specifically included "sale of store, and closing of sale of store." Once the Alpharetta Subway opened, Conner took over its daily operations. Six months later, Hart made Conner a fifty percent partner.

Hart subsequently offered Conner a partnership in the Lavonia Subway. Conner accepted Hart's offer, and they became equal partners in the Lavonia location. When the Lavonia store opened in 1994, Conner ran the daily operations.

The partnerships operated without incident for several years. Conner, however, eventually told Hart that she wanted to sell the Lavonia location. She spoke to a potential buyer, informed the buyer

---

[1] *Evans Timber Co. v. Central of Ga. R. Co.*, 239 Ga. App. 262 (1) (519 SE2d 706) (1999).
[2] Id.

that she wanted to sell, and directed him "to go talk to Mr. Hart." At some point, Hart began negotiating with this buyer to sell the Lavonia store. He later entered negotiations to sell the Alpharetta store to a different buyer.

On December 3, 1998, Conner asked Hart about the negotiations for sale of the Lavonia store. Hart responded that the buyer was pursuing financing. Almost two weeks later, Conner again met with Hart and inquired about the sale: "I asked him when Lavonia sold . . . what would be my part. Because at that time I did not even know the asking price because he's the one that is well-known [sic] on how to figure that up. So at that point in time . . . I didn't even know what the asking price was."

Hart told her that the sale might go forward, but that she would receive no proceeds from the sale because she had not invested any money in the Lavonia partnership. According to Hart, Conner was only a partner in profits in the Alpharetta and Lavonia stores and had no equity interest. Hart also told Conner that she had given him a power of attorney authorizing him to sell the Lavonia Subway. Conner responded that she had not signed a power of attorney relating to the Lavonia location.

On December 23, 1998, Hart entered into an agreement to sell the Lavonia store. A few days later, he signed an agreement to sell the Alpharetta store. These December 1998 agreements required payment of the sale proceeds directly to Hart. Hart signed Conner's name to both agreements, allegedly pursuant to powers of attorney, and scheduled the closings for January 1999.

Before the closings took place, Conner sued Hart, alleging fraud and breach of fiduciary duty stemming from Hart's effort to sell the stores and keep the proceeds for himself. She also requested injunctive relief to prevent Hart from selling the partnerships' assets pending dissolution of the partnerships. At a subsequent evidentiary hearing, Conner stated that she did not object to selling the Alpharetta and Lavonia stores. The trial court allowed the sales to go forward, but ordered that Conner participate in the closings and that any disputed sale proceeds be deposited into the court's registry. Both sales later closed under amended purchase contracts with Conner's participation and agreement. According to Conner, they received a fair price for the stores.

The case proceeded to trial on Conner's tort claims, as well as the question of how to dissolve the partnerships and distribute the proceeds deposited with the court. At the close of Conner's case, the trial court directed a verdict for Hart on Conner's breach of fiduciary duty, fraud, attorney fee, and punitive damages allegations. The court also exercised its equity jurisdiction to wind up both partnerships. Despite Hart's claims to the contrary, the court found that Conner

and Hart were equal equity partners and awarded Conner one-half of the partnerships' assets.[3]

1. On appeal, Conner first argues that the trial court erred in granting Hart a directed verdict on the breach of fiduciary duty claim. We find no error.

(a) *The Lavonia Store.* According to Conner, although she wanted the Lavonia store sold, she never gave Hart authority to retain the sale proceeds for himself. She asserts that he breached his fiduciary duty by concealing the sale from her, using a forged power of attorney to sign her name to the December 1998 Lavonia purchase agreement, and structuring the sale to deprive her of her interest in the store assets.

Unquestionably, partners owe a fiduciary duty to one another.[4] To successfully bring a tort claim for breach of this duty, however, the claimant must show injury. As described by our Supreme Court, the traditional formula for a claim in tort has three elements: "duty, breach (failure to conform to the required standard) and damage proximately caused by the breach."[5] Damages compensate for injury and may be inferred from invasion of a property right.[6] Where no actual damage flows from the injury, nominal damages may be awarded.[7] Yet, some injury — even if small or nominal — is necessary.[8] In this case, Conner was not injured by the alleged breaches of duty.

As an initial matter, Conner's claim that Hart concealed the Lavonia sale from her lacks merit. Conner encouraged Hart to sell the store, spoke with the eventual buyer, told the buyer that she wanted to sell, and sent the buyer to meet with Hart. She testified that Hart negotiated the sale and set the sale price because "he's the one that is well-known [sic] on how to figure that up." Hart told her during the negotiations that she would receive nothing from the sale and that he had her power of attorney giving him the right to sell the store. Finally, Conner testified that she never objected to the sale,

---

[3] Hart has not appealed this ruling.

[4] See OCGA § 23-2-58 ("Any relationship shall be deemed confidential . . . where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc."); *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 606 (1) (503 SE2d 278) (1998) ("Fiduciary duties and obligations are owed by those in confidential relationships.").

[5] *Tante v. Herring*, 264 Ga. 694 (1) (453 SE2d 686) (1994).

[6] OCGA § 51-12-4; *U. S. Fidelity &c. Co. v. Paul Assoc.*, 230 Ga. App. 243, 251 (8) (496 SE2d 283) (1998).

[7] Id.

[8] See OCGA § 51-12-4 ("Damages are given as compensation for *injury*. . . . If an *injury* is small or the mitigating circumstances are strong, nominal damages only are given.") (emphasis supplied).

even after Hart informed her that she would receive no proceeds, because she "always wanted to sell Lavonia." The evidence shows that she left the sale's details to Hart, who made his position regarding the transaction quite clear. As Conner admits in her brief, she moved to block the sale "[u]pon *learning from Hart* that she was to receive nothing from the sale of the Lavonia store."[9] We are hard-pressed to find concealment.

Furthermore, even if Hart did conceal some aspects of the sale from her, Conner suffered no injury. She argues that Hart used an invalid or "forged" power of attorney to sign the December 1998 agreement, through which he planned to keep all proceeds for himself. At trial, the parties presented conflicting evidence regarding the validity of the Lavonia power of attorney and the rightful owner of those proceeds. The evidence clearly showed, however, that the sale outlined in the December 1998 Lavonia agreement never closed. Instead, Conner sought judicial intervention, participated in a court-approved closing, agreed to the sale terms, and placed the proceeds into the court's registry for judicial distribution. Ultimately, she received 50 percent of these proceeds.

Recognizing that she consented to the sale and received her share of the proceeds, Conner does not claim any actual damages from the alleged breaches of duty. She rests her argument on nominal damages, asserting that Hart invaded her property rights by "exercis[ing] dominion over [her] partnership assets." But, although Hart may have *attempted* to invade her property rights, he did not succeed. The sale did not close under the December 1998 purchase agreement, and he never exercised control over Conner's property. Hart's claimed breaches — failing to disclose aspects of the sale, signing Conner's name to the purchase contract, and structuring the transaction to benefit only himself — resulted in no harm, as Hart never completed the contemplated transaction.[10] Rather, after Hart told Conner that he planned to keep all of the sale proceeds, she stopped the sale. Under these circumstances, the trial court properly granted Hart a directed verdict on Conner's fiduciary duty claim relating to the Lavonia store.

(b) *The Alpharetta Store*. A directed verdict was also proper on Conner's fiduciary duty claim involving the Alpharetta store. Conner testified that, although she hoped to sell the Lavonia store, she never consented in December 1998 to selling the Alpharetta location, which she wanted to keep. She admitted, however, that she executed a

---

[9] (Emphasis supplied.)

[10] See *Fuller v. Fuller*, 211 Ga. 201, 202-203 (84 SE2d 665) (1954) (by not delivering deeds executed to defraud creditors, "grantor fell short of executing his fraudulent purpose, and [was] guilty of no wrong to his creditors").

power of attorney giving Hart "full and complete power and authority" to conduct the Alpharetta store's affairs, including its sale. Nothing in the power of attorney required Hart to obtain Conner's consent before entering into the December 1998 Alpharetta purchase agreement. Because Hart was expressly authorized to sell the Alpharetta store, his attempt to do so cannot constitute a breach of fiduciary duty.[11]

Moreover, even if Hart exceeded his authority by not informing Conner about the sale or structuring the transaction to benefit only himself, Conner's breach of fiduciary duty claim still must fail. She presented no evidence that these alleged breaches harmed her in any way. Like the Lavonia transaction, the Alpharetta sale did not proceed as Hart originally intended under the December 1998 purchase contract. On the contrary, it closed under terms approved by Conner, who participated in and profited from the sale.

2. Conner also contends that the trial court erred in directing a verdict for Hart on her fraud claim. According to Conner, she presented ample evidence that Hart fraudulently concealed the Alpharetta and Lavonia sales from her. As discussed above, however, Conner gave Hart a general power of attorney to sell the Alpharetta store. Furthermore, she knew Hart was negotiating the Lavonia sale, knew he claimed to have her power of attorney to sell the store, and never objected to that sale, even after Hart told her that she would receive no proceeds. The record belies Conner's concealment claim.

Even assuming some evidence of concealment exists, the trial court properly directed a verdict on Conner's fraud allegation. Fraud has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages."[12] Conner cannot show damages.

Again, Conner does not claim actual damages, but argues that her fraud evidence permitted a nominal damages award. Our Supreme Court has held that nominal damages will not support a fraud claim: "The rule is that an award of nominal damages for fraud is improper, as to establish a cause of action for fraud, a party must show that actual damages, not simply nominal damages, flowed from the fraud alleged."[13] Yet, even if nominal damages could satisfy fraud's damages requirement,[14] Conner's evidence does not authorize

---

[11] See *Bumgarner v. Green*, 227 Ga. App. 156, 158-160 (1) (489 SE2d 43) (1997) (conduct permitted by an agreement does not constitute breach of fiduciary duty).

[12] *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000).

[13] (Punctuation omitted.) *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990). See also *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 713 (2) (507 SE2d 493) (1998).

[14] See *U. S. Fidelity*, supra at 251 (8) ("Fraud or breach of a legal duty may give rise to nominal damages; even if plaintiff suffered only nominal damages by them, the question of

a nominal damages award.

The sales anticipated by the December 1998 purchase contracts did not close. Hart arguably tried to exercise control over Conner's partnership assets, but he disclosed his plans to her, enabling Conner to stop him and prevent injury. Conner alleges that Hart's fraudulent conduct forced her to file suit, which caused the partnership proceeds to be deposited in the court's registry, "thus denying [her] her share of [those] proceeds." The record shows, however, that Conner agreed to sell the stores and place the partnership proceeds into the registry for court distribution. We cannot find that Conner was injured by a judicial procedure in which she willingly participated.[15]

" 'Falsehood, or . . . a lie, without damage, will not entitle the plaintiff to recover.' "[16] Because Conner has shown no invasion of her person or property sufficient to sustain a damages award, her fraud claim must fail.[17] Accordingly, the trial court properly directed a verdict for Hart on this claim.

3. Finally, Conner argues that the trial court erred in directing a verdict on her claims for attorney fees and punitive damages. According to Conner, "[i]f [she] is entitled to submit the issues of breach of fiduciary duty and fraud to the jury for recovery of nominal damages, then [she] is also entitled to submit the issue of attorney fees to the jury." She further claims that her evidence of fraud and breach of fiduciary duty authorized a punitive damages recovery. As found in Divisions 1 and 2, however, the trial court properly granted Hart's motion for directed verdict on Conner's fraud and fiduciary duty claims. Accordingly, we find no error in the trial court's decision to grant Hart a directed verdict on Conner's claims for attorney fees and punitive damages, as well.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 19, 2001.

---

damages is for the jury.") (punctuation omitted). Because Conner's evidence does not support a nominal damages award, we need not address the apparent conflict between *U. S. Fidelity* and the Supreme Court's decision in *Stiefel*, supra.

[15] See *Hendricks v. Monroe Realty*, 196 Ga. App. 121, 122-123 (3) (395 SE2d 375) (1990) (party who agrees to place disputed funds in escrow pending resolution of dispute cannot complain that, by escrowing the funds, the opposing party interfered with his right to the money). Cf. *Callahan v. Panfel*, 195 Ga. App. 891, 893 (4) (395 SE2d 80) (1990) (invasion of property right resulted from real estate agent's unilateral decision to pay earnest money into the court's registry, rather than returning money to buyer upon demand; although money was subsequently returned to buyer with interest, agent had no legal basis for withholding or interpleading the money).

[16] *Foster v. Sikes*, 202 Ga. 122, 125 (42 SE2d 441) (1947).

[17] *Mack v. Smith*, 178 Ga. App. 652, 653 (4) (344 SE2d 474) (1986).

*Hipes & Norton, John D. Hipes, Joseph C. Peake III*, for appellant.

*Wilson Law Firm, L. Matt Wilson, Davis K. Loftin*, for appellee.