**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 7, 2016**

# In the Court of Appeals of Georgia

A16A0769, A16A0781. SCHINAZI et al. v. EDEN; and vice versa.

PHIPPS, Presiding Judge.

Carol Lynn Eden,[1] as Trustee of the 2005 Schinazi GST Grantor Trust ("the Trust"), petitioned for a declaratory judgment and sought damages against Raymond F. Schinazi and RFS & Associates, LLC (collectively, "the defendants"), claiming that the defendants had interfered with Trust assets. The trial court granted summary judgment to Eden on the declaratory judgment request, but awarded the defendants summary judgment on her damages claims.

In Case No. A16A0769, the defendants appeal the trial court's declaratory judgment ruling. Eden cross-appeals in Case No. A16A0781, challenging the entry

---

[1] When the events underlying this appeal first began, Eden was known as "Carol Lynn Schinazi." For ease of discussion, we will refer to her as "Eden."

of summary judgment for the defendants. For reasons that follow, we affirm the declaratory judgment award in Case No. A16A0769, and we affirm in part and reverse in part the summary judgment ruling in Case No. A16A0781.

On appeal from the grant of summary judgment, we conduct "a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[2] So viewed, the record shows that Schinazi established the Trust on August 23, 2005, naming Eden as Trustee and his daughter as the primary beneficiary. The Trust agreement authorized Schinazi to deposit property into the Trust, and he initially funded it with a $500,000 gift. Although the Trust was irrevocable, Schinazi

> expressly reserve[d] the right, exercisable in a nonfiduciary capacity without the approval or consent of any person in a fiduciary capacity, during [his] lifetime to reacquire any part or all of the property of any trust created hereunder by substituting property of equivalent value.

Two days after creating the Trust, Schinazi and RFS & Associates, LLC, a corporation in which Schinazi held a controlling interest and served as manager,

---

[2] *Insight Technology v. FreightCheck*, 280 Ga. App. 19, 20 (633 SE2d 373) (2006) (citation and punctuation omitted).

2

formed a limited partnership known as RFS Partners, L.P. The partnership agreement named RFS & Associates as "General Partner," designated Schinazi as "Limited Partner," and set forth procedures for transferring partnership interests. It also provided:

> NEITHER THE INTERESTS NOR ANY PART THEREOF MAY BE OFFERED FOR SALE, PLEDGED, HYPOTHECATED, SOLD, ASSIGNED OR TRANSFERRED AT ANY TIME EXCEPT IN COMPLIANCE WITH THE TERMS AND CONDITIONS OF . . . THIS AGREEMENT.

In addition to being a limited partner, Schinazi held a 99 percent economic interest in RFS Partners. On August 31, 2005, Schinazi assigned his partnership interest to the Trust in exchange for a $7,000,000 promissory note. To accomplish the transfer, Schinazi (separately as transferor and as manager of RFS & Associates) and Eden (as Trustee) executed a "Sale and Assignment of Interests in RFS Partners, L.P." The "Sale and Assignment" document complied with the transfer requirements in the partnership agreement.

Shortly thereafter, Schinazi made a capital contribution to RFS Partners, contributing 1,000,000 shares of Pharmasset, Inc. stock to the partnership in exchange for a new limited partnership interest. Schinazi signed a consent agreement relating

3

to the transaction on behalf of himself, individually, and as manager of RFS & Associates, the general partner. Eden signed for the Trust, which was identified as "Limited Partner."

Over six years later, on January 2, 2012, Schinazi sent Eden a promissory note in the amount of $58,290,000, stating that he was "exercising [his] asset substitution right [under the Trust agreement] by substituting [the] Promissory Note for the limited partnership interest owned by the Trust in RFS Partners, L.P." Schinazi asked Eden to acknowledge in writing that he was now "the sole owner of all interest formerly owned by the Trust in the Partnership." Eden refused to sign the acknowledgment, asserting that the promissory note did not constitute a substituted asset of equivalent value, as required by the Trust agreement. Despite this refusal, Schinazi informed Eden on September 11, 2012, that "the Trust's balance sheet consists of" the $58,290,000 promissory note, rather than an interest in RFS Partners.

Eden sued Schinazi and RFS & Associates in November 2012, seeking a declaratory judgment regarding which party – the Trust or Schinazi – owned the RFS Partners interest that Schinazi sought to reacquire in January 2012. She also asserted claims for failure to tender assets of equivalent value, breach of fiduciary duty, litigation expenses under OCGA § 13-6-11, and punitive damages. Finding that the

4

Trust still owned the partnership interest, the trial court granted summary judgment to Eden on the declaratory judgment claim, but awarded the defendants summary judgment on her remaining allegations. These appeals followed.

*Case No. A16A0769*

1. The defendants argue that Eden is not entitled to declaratory relief because Schinazi's daughter, the primary Trust beneficiary, released them from liability on Eden's claims. The record shows that, in addition to the Trust at issue here, another Trust was created in 2006 ("the 2006 Trust") for the benefit of Schinazi's daughter. Acting as trustee of the 2006 Trust, Schinazi petitioned his daughter for an accounting of assets in 2012, and she counterclaimed for breach of fiduciary duty. The case eventually settled, and, in 2013, Schinazi's daughter released Schinazi

> individually or in his capacity as grantor, beneficiary or trustee of any trust, or any of his agents or entities acting in any capacity with respect to the 2006 Trust and the Other Trusts, for any and all claims . . . that were asserted or capable of being asserted by [the daughter], [her husband], or their descendants.

According to the defendants, this release barred Eden from pursuing any claims on behalf of the Trust. By its terms, however, the release applied only to claims Schinazi's daughter, her husband, and their descendants could have asserted. And

5

generally, any cause of action belonging to a trust must be pursued by the trustee, not the trust beneficiaries.[3] The defendants have not demonstrated that Schinazi's daughter, son-in-law, or other heirs could have brought the declaratory judgment claim or that it falls within the release. Accordingly, the release did not preclude the trial court's summary judgment award.[4]

2. The trial court granted declaratory relief to Eden, finding that the Trust's interest in RFS Partners had not been properly transferred to Schinazi and that the Trust still owned the partnership interest. The defendants challenge this ruling on appeal. They contend that, pursuant to the terms of the Trust agreement, Schinazi exercised his right on January 2, 2012, to reacquire the Trust's partnership interest, which now belongs to him.

---

[3] See *Leone Hall Price Foundation v. Baker*, 276 Ga. 318 (1) (577 SE2d 779) (2003) ("A trust can act only through its trustees.") (citation and punctuation omitted); *Skinner v. Dekalb Federal Sav. & Loan Assoc.*, 246 Ga. 561, 563 (272 SE2d 260) (1980) ("[L]egal title is in the trustee, and the cause of action is his."); *PricewaterhouseCoopers v. Bassett*, 293 Ga. App. 274, 277 (1) (666 SE2d 721) (2008) ("It is axiomatic that a trust can act only through its trustees.") (citation omitted); *Wammock v. Smith*, 143 Ga. App. 186, 187 (1) (237 SE2d 668) (1977) ("It is apparent that the trust can act only through its trustees and that it has no independent legal existence apart from its trustees.").

[4] See *Brooks v. Gwinnett Community Bank*, 311 Ga. App. 806, 808 (717 SE2d 647) (2011) (trial court properly rejected defense based on waiver and release where record contained no evidence that claim had been released).

"In construing an express trust, we look first and foremost to the language therein and interpret that language to effectuate the intent of the settlors."[5] The express language of the Trust agreement clearly gave Schinazi the right to reacquire Trust property by substituting property of equivalent value. He did not need Eden's consent to exercise this right. But the language still required him to acquire – or reacquire – the property from the Trust. The question is whether Schinazi properly did so.

The record shows that the Trust initially held only an assigned limited partnership interest in RFS Partners. As an assignee, it enjoyed no partnership rights or powers, which remained with Schinazi.[6] Under the partnership agreement, however, the Trust qualified as a "Family Member." And a family member that received an assigned limited partnership interest could become a limited partner "upon the written approval of the General Partner, which may be granted or withheld in the sole and absolute discretion of the General Partner."

---

[5] *Wells Fargo Bank v. Cook*, 332 Ga. App. 834, 843 (2) (775 SE2d 199) (2015).

[6] See OCGA § 14-9-702 (4) ("Until the assignee of a partnership interest becomes a partner, the assignor partner continues to be a partner and to have the power to exercise any rights or powers of a partner, except to the extent those rights or powers are assigned.").

The trial court found that the Trust had become a limited partner by September 2005. We agree. On September 26, 2005, RFS & Associates, the Trust, and Schinazi entered into a consent agreement regarding Schinazi's capital contribution to RFS Partners and the creation of his new limited partnership interest. The agreement referred to the Trust as a "limited partner of the Partnership" and was signed by all parties, including RFS & Associates as "GENERAL PARTNER" and the Trust as "LIMITED PARTNER." Such language evidences RFS & Associate's written approval of – and agreement to – the Trust's status as a limited partner. The document also discussed the Trust's consent to Schinazi's new partnership interest, consent that would not have been necessary had the Trust merely been an assignee.[7]

Given this evidence, the trial court correctly found that the Trust became a limited partner before Schinazi sought to reacquire the Trust's partnership interest in

---

[7] See OCGA §§ 14-9-702 (4) (discussing rights of assignee); 14-9-301 (a) (1) (a person may acquire a partnership interest directly from the limited partnership "upon compliance with the partnership agreement or, if the partnership agreement does not so provide in writing, upon the written consent of all partners"); 14-9-704 (b) ("An assignee who has become a limited partner has, to the extent assigned, the rights and powers and is subject to the restrictions and liabilities of a limited partner under the partnership agreement and this chapter.").

8

2012.[8] Furthermore, because the Trust was a limited partner, any transfer of its interest was governed by Section 5 of the partnership agreement. That section outlined the procedure for transferring a limited partnership generally (Subsection 5.2 (a)) or to a "Family Member" (Subsection 5.3). It also regulated the "Form of Transfers." Under Subsection 5.4:

A Limited Partner may transfer all or any part of such Limited Partner's economic interest in the Partnership, subject to compliance with the other provisions of this Section 5, if the transferor and transferee Partners and, if applicable, the General Partner, execute an Assignment substantially in the form of Exhibit A or A-1, as applicable, attached hereto and incorporated herein by this reference. The General Partner's execution of such Assignment shall signify, if applicable, the consent of the General Partner to such transfer.

Construed together, these provisions established that a limited partnership interest could be transferred only after: (1) compliance with the transfer procedures in Subsections 5.2 (a) or 5.3; and (2) execution of the appropriate transfer form.[9]

_____

[8] See OCGA § 14-9-704 (a) ("An assignee of a partnership interest . . . may become a limited partner if and to the extent that: (1) [t]he partnership agreement so provides; or (2) [a]ll other partners consent.").

[9] See OCGA § 13-2-2 (4) (when interpreting a contract, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part").

9

Nothing in the Trust agreement authorized Schinazi to circumvent these requirements. And Schinazi has pointed to no evidence that the parties executed the necessary transfer form. In contrast to 2005, when he transferred his original partnership interest to the Trust using the "Sales and Assignment" document referenced in the partnership agreement, Schinazi sought to complete the 2012 transaction merely by obtaining an "Acknowledgment of Transfer of Interest" from Eden. This "Acknowledgment," which was never executed, did not meet the transfer requirements in Subsection 5.4.

Under the plain terms of the partnership agreement, the Trust's interest in RFS Partners could not be transferred absent compliance with Section 5. Although Schinazi had the right to reacquire the interest, he failed to follow the necessary steps to complete the acquisition. The Trust, therefore, remains the owner of the limited partnership interest unless and until it is transferred pursuant to Section 5.[10]

*Case No. A16A0781*

3. In her cross-appeal, Eden argues that the trial court erred in granting summary judgment to the defendants on her breach of fiduciary duty claim. We agree.

---

[10] In granting summary judgment, the trial court found that "[t]he Trust is not required to transfer its limited partnership interest to Schinazi." Given Schinazi's failure to follow the transfer requirements, this statement is true. We express no opinion on whether Schinazi can compel the Trust to participate in and execute the necessary forms to facilitate any future reacquisition effort.

10

(a) The defendants contend that summary judgment was proper because, as a matter of law, Eden did not satisfy the essential elements of her claim. A claim for breach of fiduciary duty requires proof of three elements: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."[11] Without question, "partners owe a fiduciary duty to one another."[12] RFS & Associates, Schinazi, and the Trust were partners in RFS Partners when Schinazi sought to reacquire the Trust's interest. Schinazi was also the manager of RFS & Associates, which, as the general partner, made "[a]ll decisions relating to the business and affairs of the [p]artnership." Such evidence creates an issue of fact as to duty.[13]

---

[11] *In re Estate of Hubert*, 325 Ga. App. 276, 286 (5) (750 SE2d 511) (2013) (citation and punctuation omitted).

[12] *Conner v. Hart*, 252 Ga. App. 92, 94 (1) (a) (555 SE2d 783) (2001) (footnote omitted). See also OCGA § 23-2-58 (fiduciary or confidential relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.").

[13] See *Conner*, supra; OCGA § 23-2-58. See also *Cushing v. Cohen*, 323 Ga. App. 497, 508 (5) (746 SE2d 898) (2013) (based on evidence presented, questions of fact remained as to existence of fiduciary duty between officer of corporation and corporate investors).

11

Eden also offered evidence regarding breach. Although she objected to Schinazi's reacquisition efforts, financial records from RFS Partners show that the Trust's partnership interest was transferred – at least on the partnership books – to Schinazi in 2012. As discussed above, this transfer did not comply with the partnership agreement.[14] Furthermore, the record raises questions about the adequacy of the promissory note Schinazi tendered in exchange for the transfer. Some evidence indicates that the value of the partnership interest increased just days after the tender, when Pharmasset – a company in which RFS Partners owned significant stock – was purchased by another entity. This purchase was not finalized until January 12, 2012, but had been announced several months before Schinazi tendered the note. Material questions of fact, therefore, remain regarding breach.[15]

We also find the evidence of damage sufficient to avoid summary judgment. The defendants claim that, even if a breach occurred, the Trust suffered no damage because the transfer has now been declared invalid. Damages, however, "compensate

---

[14] See Division 1, supra.

[15] See *AAF-McQuay, Inc. v. Willis*, 308 Ga. App. 203, 211-212 (1) (c) (707 SE2d 508) (2011) ("[T]he fiduciary duty of good faith prohibits a partner from improperly ousting another partner and appropriating for himself the assets and property of the partnership, and from withholding financial information from other partners for purposes of self-dealing.").

12

for injury and may be inferred from invasion of a property right."[16] And "[w]here no actual damage flows from the injury, nominal damages may be awarded."[17]

Viewed favorably to Eden, the evidence shows that the defendants unilaterally transferred the Trust's property interest in RFS Partners to Schinazi. Although the trial court subsequently deemed that transfer invalid, the Trust's interest was invaded, creating a jury question as to injury and resulting damage, either actual or nominal.[18]

(b) Despite the record evidence, the trial court awarded summary judgment to the defendants after finding that the fiduciary duty claim could not "be asserted independent of the declaratory judgment action." It is true that a claim for damages "made *dependent* upon [a] prayer for declaratory judgment" cannot proceed.[19] But

---

[16] *Conner*, supra (footnote omitted).

[17] Id. (footnote omitted).

[18] See *Moses v. Pennebaker*, 312 Ga. App. 623, 631 (4) (b) (719 SE2d 512) (2011) (defendant member of limited liability corporation breached fiduciary duty to another member by managing corporation without authority and setting up a competing company; although defendant testified that competing company did not conduct business or sell products, award of nominal damages was proper).

[19] *Gay v. Hunt*, 221 Ga. 841, 846 (2) (b) (148 SE2d 310) (1966) (emphasis in original).

separate damages claims "not . . . specifically bottomed on the declaratory judgment" may be raised in a petition seeking declaratory relief.[20]

Although related to the declaratory judgment allegations, Eden's fiduciary duty claim was not "specifically bottomed" on the request for declaratory relief. As trustee, Eden sought a declaration of the Trust's interest in RFS Partners to resolve uncertainty regarding Trust assets, future distributions, and tax liabilities. The fiduciary duty claim, on the other hand, involves the defendants' fiduciary responsibilities toward the Trust, obligations under the partnership agreement, and alleged misconduct in unilaterally transferring ownership of the Trust's partnership interest.

The damages sought in the tort claim were not tied to Eden's "prayer for declaratory judgment."[21] She did not, for example, request damages upon entry or denial of declaratory relief.[22] And resolution of the fiduciary duty claim turns on

---

[20] Id.; see also OCGA § 9-4-3 (a) ("Further plenary relief, legal or equitable, including but not limited to damages, injunction, mandamus, or quo warranto, may be sought in a petition seeking declaratory judgment.").

[21] *Gay*, supra (emphasis omitted).

[22] Compare *Calvary Independent Baptist Church v. Rome*, 208 Ga. 312, 315 (4) (66 SE2d 726) (1951) (damages could not be recovered in declaratory judgment action involving property rights where petition asserted that petitioner was entitled

14

whether an actionable breach of duty occurred, not on the validity of Schinazi's asset reacquisition. The trial court, therefore, erred in granting summary judgment on this basis.

(c) Seeking to uphold the summary judgment ruling, the defendants argue that the settlement release executed by Schinazi's daughter precluded the fiduciary duty claim. As discussed in Division 1, however, the tort action belongs to the Trust, not the Trust beneficiaries. Because the defendants have not demonstrated that the beneficiaries could have brought the claim, their release argument fails.[23]

4. Eden also challenges the summary judgment ruling with respect to punitive damages and litigation expenses. The trial court concluded that, as a matter of law, Eden could not recover on these claims because uncertainty over ownership of RFS

_____

to damages if court denied its ownership claim); *Gay*, supra (mandamus relief requested in petition for declaratory judgment improper where petition first sought declaratory judgment as to liability, then requested "that mandamus absolute be granted against the party adjudged by said declaratory judgment to be liable"); *Southern Heritage Ins. Co. v. Greene Ins. Agency*, 249 Ga. App. 749, 750 (1) (549 SE2d 743) (2001) (in declaratory judgment action regarding insurance coverage, insurance company could not "seek[] indemnification from the agent in the event that the trial court declares that [the insurance company] is obligated to pay its insureds' claims").

[23] See *Brooks*, supra.

Partners led the Trust to seek declaratory relief.[24] According to the trial court, the "bona fide controversy" over the Trust's ownership interest and status in the partnership prevents recovery for litigation expenses and punitive damages. We disagree.

(a) A jury may award litigation expenses to a plaintiff "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."[25] As noted by our Supreme Court, "every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees."[26] And generally, questions of bad faith must be resolved by the jury.[27] Accordingly, "[b]ecause the intentional tort[] of . . . breach of fiduciary duty . . . remain[s] for the jury's consideration, the

---

[24] Noting the derivative nature of these claims, the trial court also found summary judgment appropriate following its award of summary judgment on the breach of fiduciary duty claim. In Division 3, however, we reversed the trial court's ruling as to breach of fiduciary duty.

[25] OCGA § 13-6-11.

[26] *Tyler v. Lincoln*, 272 Ga. 118, 122 (2) (527 SE2d 180) (2000) (citation and punctuation omitted).

[27] Id.

16

claim for attorney fees rooted in bad faith concerning those actions should have also been left for the jury."[28]

(b) Punitive damages are appropriate where the clear and convincing evidence demonstrates that a defendant acted with "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."[29] Eden offered evidence that the defendants willfully violated the partnership agreement and, despite her protestations, divested the Trust of a valuable asset – its interest in RFS Partners. These circumstances raise material factual questions as to whether the defendants acted with the willfulness or want of care necessary to support a punitive damages award. The trial court, therefore, erred in granting summary judgment on this claim.[30]

5. The trial court also awarded summary judgment to the defendants on Eden's claim for "failure to tender assets of equivalent value." Eden concedes that summary

---

[28] *Insight Technology*, supra at 29 (6) (citation and punctuation omitted).

[29] OCGA § 51-12-5.1 (b).

[30] See *Tyler*, supra at 121 (1) (reversing grant of summary judgment on punitive damages claim where material questions of fact remained as to defendant's willful or wanton conduct); *Insight Technology*, supra at 28 (6) (same).

judgment on this claim was proper, given the declaratory judgment ruling. Accordingly, the trial court's ruling as to this claim is affirmed.

*Judgment in Case No. A16A0769 affirmed. Judgment in Case No. A16A0781 affirmed in part and reversed in part. Dillard and Peterson, JJ., concur.*