**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** ***physically received*** **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2019**

# In the Court of Appeals of Georgia

A19A0474. SCHINAZI et al. v. EDEN, AS TRUSTEE OF TE 2005
SCHINAZI GST GRANTOR TRUST.

REESE, Judge.

Raymond F. Schinazi, individually, and RFS & Associates, LLC, as the General Partner of RFS Partners L.P. (collectively, "the Appellants"), appeal[1] from the trial court's denial of their motion to compel arbitration of new claims asserted in an amended petition filed by Carol Eden, the trustee of the 2005 Schinazi GST Grantor Trust ("Trust"). The Appellants contend, inter alia, that the trial court erred in concluding that they had waived their right to arbitration under a partnership agreement by failing to assert the right in a timely manner. For the reasons set forth infra, we affirm.

---

[1] This Court granted the Appellants' application for interlocutory review.

This is the second appeal to this Court in the underlying case. In 2016, this Court issued an opinion in *Schinazi v. Eden*,[2] in which we presented the following overview of the history between the parties and their litigation, as follows:

> Schinazi established the Trust on August 23, 2005, naming Eden as Trustee and his daughter as the primary beneficiary. The Trust agreement authorized Schinazi to deposit property into the Trust, and he initially funded it with a $500,000 gift. Although the Trust was irrevocable, Schinazi "expressly reserve[d] the right, exercisable in a nonfiduciary capacity without the approval or consent of any person in a fiduciary capacity, during [his] lifetime to reacquire any part or all of the property of any trust created hereunder by substituting property of equivalent value."
>
> Two days after creating the Trust, Schinazi and RFS & Associates, LLC, a corporation in which Schinazi held a controlling interest and served as manager, formed a limited partnership known as RFS Partners, L.P. The partnership agreement named RFS & Associates as "General Partner," designated Schinazi as "Limited Partner," and set forth procedures for transferring partnership interests. It also provided: "NEITHER THE INTERESTS NOR ANY PART THEREOF MAY BE OFFERED FOR SALE, PLEDGED, HYPOTHECATED, SOLD, ASSIGNED OR TRANSFERRED AT ANY TIME EXCEPT IN COMPLIANCE WITH THE TERMS AND CONDITIONS OF … THIS AGREEMENT."

---

[2] 338 Ga. App. 793 (792 SE2d 94) (2016).

In addition to being a limited partner, Schinazi held a 99 percent economic interest in RFS Partners. On August 31, 2005, Schinazi assigned his partnership interest to the Trust in exchange for a $7,000,000 promissory note. To accomplish the transfer, Schinazi (separately as transferor and as manager of RFS & Associates) and Eden (as Trustee) executed a "Sale and Assignment of Interests in RFS Partners, L.P." The "Sale and Assignment" document complied with the transfer requirements in the partnership agreement.

Shortly thereafter, Schinazi made a capital contribution to RFS Partners, contributing 1,000,000 shares of Pharmasset, Inc. stock to the partnership in exchange for a new limited partnership interest. Schinazi signed a consent agreement relating to the transaction on behalf of himself, individually, and as manager of RFS & Associates, the general partner. Eden signed for the Trust, which was identified as "Limited Partner."

Over six years later, on January 2, 2012, Schinazi sent Eden a promissory note in the amount of $58,290,000, stating that he was "exercising [his] asset substitution right [under the Trust agreement] by substituting [the] Promissory Note for the limited partnership interest owned by the Trust in RFS Partners, L.P." Schinazi asked Eden to acknowledge in writing that he was now "the sole owner of all interest formerly owned by the Trust in the Partnership." Eden refused to sign the acknowledgment, asserting that the promissory note did not constitute a substituted asset of equivalent value, as required by the Trust agreement. Despite this refusal, Schinazi informed Eden on

3

September 11, 2012, that "the Trust's balance sheet consists of" the $58,290,000 promissory note, rather than an interest in RFS Partners.[3]

In November 2012, Eden, as trustee, sued the Appellants (Schinazi and RFS & Associates), then amended the complaint in March 2013. In the amended complaint, Eden sought a declaratory judgment as to whether Schinazi or the Trust owned the partnership interest in RFS Partners that Schinazi had purportedly reacquired in January 2012. Specifically, Eden sought a declaratory judgment as to whether the $58,290,000 unsecured promissory note tendered by Schinazi as a substitute for the Trust's partnership interest was "of equivalent value" to the partnership interest, as required by the Trust, and whether the partnership interest could be transferred to Schinazi, individually, without an assignment executed by Eden, as the trustee of the owner of the partnership interest, as "*required by the Partnership Agreement*[.]"[4] Eden also asserted that a ruling on the ownership of the partnership interest would affect whether she, as trustee, sought distributions from RFS Partners, access to RFS Partners' books and records, and input regarding the management of RFS Partners.

_____

[3] *Schinazi*, 338 Ga. App. at 793-794 (punctuation omitted).

[4] (Emphasis supplied.)

4

In addition, Eden asserted two claims for breach of fiduciary duty. The first claim alleged that Schinazi had breached his fiduciary duties *under the Trust* when he purported to unilaterally reacquire the Trust's limited partnership interest in RFS Partners and transfer the interest to himself. In contrast, Eden asserted the second breach of fiduciary claim against "RFS & Associates, as the General Partner of RFS Partners, and . . . Schinazi, as the Manager of RFS & Associates," alleging that they breached their fiduciary duties "*to [Eden] and the Trust, as limited partners of RFS Partners.*"[5] In that claim, Eden claimed that the Appellants breached their fiduciary duties to her and the Trust "*under the Partnership Agreement*[ ]" by purporting to transfer the Trust's 71.675 percent limited partnership interest in RFS Partners to Schinazi without complying "*with the terms of the Partnership Agreement.*"[6] She also asserted that the Appellants had improperly transferred the partnership interest to Schinazi, which constituted self-dealing that violated the Appellants' fiduciary duties to the Trust as a limited partner of RFS Partners. In addition to these claims, Eden's amended complaint sought an accounting of the Trust's assets, an injunction preventing Schinazi from transferring or altering the Trust's assets (including the

---

[5] (Emphasis supplied.)

[6] (Emphasis supplied.)

5

partnership shares at issue), attorney fees and litigation expenses under OCGA § 13-6-11, and punitive damages. The Appellants, however, did not file a motion to compel arbitration under the Partnership Agreement.

Between March 2013 and May 2015, the parties engaged in extensive discovery, including seven depositions and thirty-seven discovery requests. Then, in May 2015, Eden filed a second amended and restated verified petition, which re-asserted the original claims and added an allegation to Count 5, the claim for breach of fiduciary duties to her and the Trust "*under the Partnership Agreement*[,]" alleging that the Appellants breached their duties by "purporting to transfer the Trust's 71.675 [percent] limited partnership interest in RFS Partners [to Schinazi] without the express consent of [Eden], as trustee of the Trust[.]"[7] Again, the Appellants did not file a motion to compel arbitration under the Partnership Agreement.

The Appellants filed a motion for summary judgment on Eden's complaint, and the trial court granted summary judgment to Eden on the declaratory judgment claim, ruling that the Trust's partnership interest in RFS Partners had not been properly transferred to Schinazi and, thus, the Trust still owned the partnership interest.[8]

---

[7] (Emphasis supplied.)

[8] See *Schinazi*, 338 Ga. App. at 793, 796 (2).

6

However, the trial court granted summary judgment to the Appellants on Eden's claims for damages.[9]

On the parties' cross-appeals from that order, this Court affirmed the trial court's grant of summary judgment to Eden on the declaratory judgment claim, specifically ruling that the trial court properly found that "the Trust became a limited partner [of RFS Partners] before Schinazi sought to reacquire the Trust's partnership interest in 2012. Furthermore, because the Trust was a limited partner, any transfer of [the Trust's] interest was governed by Section 5 of [RFS Partners'] [P]artnership [A]greement."[10] According to this Court, "[u]nder the plain terms of the [P]artnership [A]greement, the Trust's interest in RFS Partners could not be transferred absent compliance with Section 5[,]" and, because Schinazi failed to comply with Section

---

[9] See id. at 793.

[10] Id. at 797 (2). According to *Schinazi*, Section 5 of the Partnership Agreement "outlined the procedure for transferring a limited partnership generally . . . or to a 'Family Member[.]' It also regulated the "Form of Transfers." Id. at 797 (2). Further, under Section 5.4, a limited partner could transfer all or any part of his or her economic interest in RFS Partners as long as he or she complied with the other provisions of Section 5 and as long as "the transferor and transferee Partners and, if applicable, the General Partner, execute[d] an Assignment substantially in the form of Exhibit A or A-1, as applicable[.] The General Partner's execution of such Assignment shall signify, if applicable, the consent of the General Partner to such transfer." Id.

5 of the Partnership Agreement when he attempted to reacquire the Trust's partnership interest, the purported transfer of the partnership interest to Schinazi was invalid.[11] Thus, the Trust remained the owner of the partnership interest.[12]

As for Eden's breach of fiduciary duty claim against the Appellants based on their alleged violation of the Partnership Agreement, this Court reversed the grant of summary judgment to the Appellants, ruling that factual issues existed for jury resolution.[13] This Court also held that the fiduciary duty claim was a separate damages claim that was independent from the declaratory judgment action, because it involved the Appellants' fiduciary responsibilities toward the Trust, the Appellants' obligations to the Trust "*under the [P]artnership [A]greement*," and alleged misconduct by the Appellants regarding the attempted unilateral transfer of the Trust's partnership interest.[14]

---

[11] Id. at 798 (2).

[12] See id.

[13] See id. at 798-799 (3) (a).

[14] See id. at 799-800 (3) (b) (emphasis supplied). Based on these rulings, this Court also reversed the grant of summary judgment to the Appellants on Eden's claims for attorney fees and punitive damages. See id. at 800-801 (4) (a), (b).

8

The remittitur from this Court's decision was filed in the trial court on June 7, 2017.[15] Thus, at that point, it had been conclusively established that Schinazi's purported reacquisition of the Trust's limited partnership interest in RFS Partners was invalid;[16] the Trust was the owner of the partnership interest;[17] and the Trust was a limited partner of RFS Partners, even before Schinazi attempted to reacquire the partnership interest.[18] Further, Eden's claim for breach of fiduciary duties under the Partnership Agreement (and related claims) remained pending for jury resolution.[19] Based on the latter ruling, on October 13, 2017, the trial court issued a case management order in preparation for the trial on Eden's remaining claims.

On November 2, 2017, Eden filed a "Third Amended and Restated Verified Petition[,]" in which she asserted additional claims against the Appellants. In response to Eden's amended complaint, the Appellants filed a motion to compel

---

[15] The Supreme Court of Georgia denied the Appellants' petitions for a writ of certiorari. See *Schinazi v. Eden*, No. S17C0487, 2017 Ga. LEXIS 393 (May 15, 2017); *Schinazi v. Eden*, No. S17C0486, 2017 Ga. LEXIS 399 (May 15, 2017).

[16] See *Schinazi*, 338 Ga. App. at 798 (2).

[17] See id.

[18] See id. at 797 (2).

[19] See id. at 798-801 (3), (4).

9

arbitration[20] for the first time, asserting that Eden's new claims arose out of and were related to the Partnership Agreement, so the agreement's arbitration clause applied to those claims. Section 8.9 (a) of the Partnership Agreement included the following arbitration clause:

> Any controversy, dispute or claim arising out of or relating to this Agreement or any transaction hereunder shall be settled by a single arbitrator appointed in accordance with this Section 8.9. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law of the state in which the arbitration is convened.

Following a hearing, the trial court denied the motion to compel, finding that the Appellants had waived their right to invoke the arbitration clause because they failed to raise it during the previous five years, while this action, "which has centered on [Eden's] claims and alleged rights under the Limited Partnership Agreement[ ]"

---

[20] See OCGA § 9-9-6 (a) ("A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. If the court determines there is no substantial issue concerning the validity of the agreement to submit to arbitration or compliance therewith and the claim sought to be arbitrated is not barred by limitation of time, the court shall order the parties to arbitrate. If a substantial issue is raised or the claim is barred by limitation of time, the court shall summarily hear and determine that issue and, accordingly, grant or deny the application for an order to arbitrate.").

was being litigated by the parties. The trial court certified the issue for immediate review, this Court granted the Appellant's application, and this appeal followed.

On appeal, this Court reviews the record "de novo to determine whether the trial court's denial of the motion to compel arbitration is correct as a matter of law."[21] However, we defer to the trial court's findings of fact upon which its denial was based unless those findings are clearly erroneous.[22]

Although Georgia has "a clear public policy in favor of arbitration,"[23] it is well-established that a party may waive its right to compel arbitration by acting in a manner "which is inconsistent with the right of arbitration."[24] In determining whether a party to an arbitration agreement has waived its arbitration right, we look at

> whether the litigation machinery has been substantially invoked and whether the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the

---

[21] *Kindred Nursing Centers Ltd. Partnership v. Chrzanowski*, 338 Ga. App. 708, 708-709 (791 SE2d 601) (2016) (citation and punctuation omitted).

[22] See *Ed Voyles Jeep-Chrysler v. Wahls*, 294 Ga. App. 876, 877 (670 SE2d 540) (2008).

[23] *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 334-335 (1) (685 SE2d 304) (2009) (punctuation and footnote omitted).

[24] *USA Payday &c. #1 v. Evans*, 281 Ga. App. 847, 849 (637 SE2d 418) (2006) (punctuation and footnote omitted).

11

plaintiff. Other relevant factors include whether important intervening steps, such as taking advantage of judicial discovery procedures not available in arbitration,[25] have taken place.[26]

What constitutes a waiver of the right of arbitration depends on the facts of each case.[27]

With these guiding principles in mind, we turn now to the Appellants' specific claims of error.

1. The Appellants contend that the trial court erred in "looking solely at the length of time from the beginning of the litigation until the filing of the motion to compel arbitration[ ]" when it concluded that the Appellants had waived their right to arbitration under the Partnership Agreement. This argument is apparently based upon the trial court's reference to "the over five-year record of this action" in its order denying the motion to compel.

---

[25] See *Ed Voyles Jeep-Chrysler*, 294 Ga. App. at 877 (noting that discovery is a limited right under the Georgia Arbitration Code); see also OCGA § 9-9-9 (b) ("Notices to produce books, writings, and other documents or tangible things; depositions; and other discovery may be used in the arbitration according to procedures established by the arbitrators.").

[26] *Ed Voyles Jeep-Chrysler*, 294 Ga. App. at 877.

[27] See *USA Payday &c. #1*, 281 Ga. App. at 850.

The Appellants' argument, however, ignores the rest of the sentence in the trial court's order, in which the court found that the "action" that the parties had litigated for five years "centered on [Eden's] claims and alleged rights *under the Limited Partnership Agreement*[.]"[28] In other words, the trial court implicitly, if not explicitly, found that the claims asserted by Eden in the original complaint and the first and second amended complaints arose out of and/or were related to the Partnership Agreement and, thus, were subject to the Partnership Agreement's arbitration clause, which, by its plain language, applied to "[a]ny controversy, dispute or claim arising out of or relating to this Agreement or any transaction hereunder[.]" Yet, because the Appellants had not invoked the arbitration clause as to any of those claims, the court found that they had waived their right to compel arbitration at that point in the litigation.

We find no error in the trial court's ruling. The Appellants were on notice in March 2013, if not earlier, that Eden was asserting a claim that the Appellants had violated their fiduciary duties *under the Partnership Agreement* to the Trust, as a limited partner of RFS Partners. The Appellants have not only failed to explain how that claim did not fall under the arbitration clause of the Partnership Agreement, they

[28] (Emphasis supplied.)

13

actually admitted during the hearing on the motion to compel arbitration that "the substantive claims in the original case [included a claim for] breach of duties under the [P]artnership [Agreement]."

Further, the Appellants have failed to explain why, instead of asserting their right to arbitration, they took actions that were clearly inconsistent with that right. These actions included, inter alia, participating in extensive discovery, including seven depositions and thirty-seven discovery requests, filing a motion for summary judgment on Eden's claims, appealing from the trial court's adverse ruling on that motion, and filing petitions for a writ of certiorari, actions which Eden estimated cost the parties five years and "hundreds of thousands of dollars[.]" Moreover, even after the case returned to the trial court following the appeal in June 2017, the Appellants failed to assert their right to arbitration of Eden's remaining claims. Nor did they file a motion to compel in response to the trial court's October 2017 order instructing the parties to file a consolidated pre-trial order by December 11, 2017. Instead, they waited until after Eden had filed the third amended complaint in November 2017 to finally file a motion to compel arbitration.

In *Wise v. Tidal Construction Company*,[29] this Court held that the defendant waived its right to arbitration by conducting itself in a manner that was inconsistent with such right. According to this Court's opinion, the defendant failed to invoke its right to arbitration immediately in response to the plaintiffs' complaint

> but, instead, proceeded with litigation of the case up to actual trial, which consisted of protracted discovery over 16 months, and *which, fundamentally, was inconsistent with its right to arbitration*. [The defendant also] engaged in extensive discovery, in a motion for summary judgment, in [a] pre-trial order, in . . . trial calendar settings, and in a jury selection.[30]

This Court noted that, "after the plaintiffs expended over $11,000 for trial preparation and after [the defendant] failed to obtain a ruling on its motion for summary judgment and faced a jury trial after jury selection, only then, at the eleventh hour, did [the defendant] invoke its rights to arbitration to avoid such jury trial."[31] This Court

---

[29] 261 Ga. App. 670 (583 SE2d 466) (2003).

[30] Id. at 674 (2) (emphasis supplied).

[31] Id.

15

concluded, therefore, that "[s]uch conduct [was] inconsistent with the rights of arbitration and constituted a waiver."[32]

Similarly, in the instant case, we hold that the Appellants' failure to invoke its right to arbitration and its decision, instead, to participate in almost five years of very costly litigation constituted conduct that was inconsistent with its right to arbitration and, thus, waived that right.[33] Consequently, under the circumstances presented, we find no error in the trial court's denial of the Appellants' motion to compel arbitration.[34]

2. The Appellants contend that the trial court erred in denying their motion to compel because the new claims in Eden's third amended complaint "greatly expanded the litigation" and because there was no evidence that Eden or the Trust had been

---

[32] Id.

[33] See *Ed Voyles Jeep-Chrysler*, 294 Ga. App. at 877 (affirming trial court's finding of waiver of the right to arbitration because the defendants did not invoke their right to arbitration until after they had received the plaintiffs' discovery responses); *USA Payday &c. #1*, 281 Ga. App. at 849-851 (affirming the trial court's finding of waiver based on the defendants' failure to move to compel arbitration until over a year after the complaint was filed, during which time the defendants participated in discovery, filed a variety of motions, and allowed the case to be placed on the trial calendar).

[34] See *Ed Voyles Jeep-Chrysler*, 294 Ga. App. at 877; *USA Payday &c. #1*, 281 Ga. App. at 849-851.

prejudiced by the Appellants' failure to assert their right to arbitration earlier in the litigation. Pretermitting whether there is any merit to these contentions,[35] the Appellants waived these arguments by failing to raise them in the trial court.[36]

Accordingly, we affirm the trial court's denial of the Appellants' motion to compel arbitration.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[35] See *Ed Voyles Jeep-Chrysler*, 294 Ga. App. at 878 (This Court held that the evidence clearly showed that the defendants took actions in the litigation that were inconsistent with their arbitration rights and that "[s]uch actions could have prejudiced [the plaintiff] by putting him to the trouble and expense of preparing for the deposition and responding to the discovery requests and by requiring him to thereby produce information that he would not be required to divulge in arbitration." Thus, this Court concluded that, "[a]s a factual matter, the trial court was authorized to find that the actions of both [defendants] were sufficiently prejudicial to [the plaintiff] to warrant a determination that each of them had waived their arbitration rights.").

[36] See *Champion Windows of Chattanooga v. Edwards*, 326 Ga. App. 232, 242 (2), n. 9 (756 SE2d 314) (2014) ("Issues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal.") (citation and punctuation omitted); *Luxenberg v. Griffith*, 237 Ga. App. 201, 202 (1) (514 SE2d 63) (1999) ("The rule is that the scope of review is limited to the scope of the ruling in the trial court as shown by the trial record and cannot be enlarged or transformed through a process of switching or shifting.") (citation and punctuation omitted).

17