A10A2037. GIBSON CONSTRUCTION COMPANY v. GAA
ACQUISITIONS I, LLC et al.

(705 SE2d 913)

MIKELL, Judge.

Gibson Construction Company ("Gibson") filed an action against GAA Acquisitions I, LLC ("GAA"), McNeil Management, LLC ("McNeil Management"), and Ryan McNeil, alleging a claim to surplus funds from a foreclosure sale, conversion, wrongful foreclosure, and conspiracy, and seeking punitive damages.[1] GAA filed a motion for summary judgment on all of Gibson's claims and on its claim for declarative relief that it had asserted in its counterclaim. Gibson filed a cross-motion for partial summary judgment on its claim to the excess proceeds and the conversion of those proceeds. Ruling from the bench, the trial court granted GAA's motion for summary judgment on all of Gibson's claims as well as on GAA's counterclaim but denied its motion for attorney fees. The trial court also denied Gibson's motion for partial summary judgment. Gibson appeals from the trial court's order,[2] and we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

So viewed, the record shows that on or about May 10, 2005, McNeil Management obtained a loan from Charter Bank in the principal amount of $1,280,000 to purchase property. Gibson performed work on the property for which it was not paid. Gibson obtained a judgment and special lien against McNeil Management in the principal amount of $375,092, and filed its claim of lien on February

---

[1] Gibson obtained a default judgment against McNeil Management, and Ryan McNeil was dismissed without prejudice due to lack of service.

[2] The trial court's written order explicitly incorporated its ruling made in open court.

[3] *Arko v. Cirou*, 305 Ga. App. 790, 791 (700 SE2d 604) (2010), citing *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997).

8, 2008. On or about April 1, 2008, Charter Bank notified McNeil Management that it was in default on the loan. Charter Bank advertised the foreclosure sale of the property in the Fulton County Daily Report on April 10, April 17, April 24, and May 5, with the intent to sell the property on the courthouse steps on May 6, 2008.

On May 5, 2008, GAA contacted Charter Bank and purchased the loan, receiving a Transfer and Assignment of Security Deed, which was recorded on May 8, 2008. On May 6, 2008, in exchange for GAA's agreement not to foreclose, McNeil Management and GAA executed the First Loan Modification Agreement (the "Modification Agreement"), which provided that the original loan documents, including the security deed, would remain in full force and effect, except for the amendments specified in the Modification Agreement. The amendments included a provision that the attorney fees to be paid in event of default would be 15 percent of the principal and interest owed on the loan.[4] The Modification Agreement also added a note modification fee of $25,000 to the security deed and increased the default interest rate. It is undisputed that the Modification Agreement was not recorded.

On May 15, 2008, GAA informed McNeil Management that it was in default and made a demand for payment of $1,048,948.42. GAA also informed McNeil Management that should it be forced to foreclose, attorney fees would be due in the amount of $157,042.26. GAA published its foreclosure notice. On July 1, 2008, attorney Jon Erickson, on GAA's behalf, auctioned the property on the courthouse steps, and there were no third-party bidders. GAA acquired the property in the form of a bid credit for less than the total sum owed, and recorded its Deed Under Power of Sale on the same day.

On September 18, 2008, Gibson submitted a demand for distribution of proceeds of sale under power to GAA under the theory that based on a loan payoff letter issued to McNeil Management on May 5, 2008,[5] the loan amount was less than the purchase amount paid at the foreclosure. Gibson contended that it was entitled to recover the excess amount, $236,159.70, by virtue of its recorded claim of lien. GAA responded that there were no excess proceeds, explaining that it "bid in" the property with a bid credit, and provided the list of items that lenders are entitled to calculate in order to arrive at the amount of the bid credit. Gibson filed the instant action in January 2009.

On appeal, Gibson argues that it was entitled to recover excess

---

[4] The original security deed provided for the payment of reasonable attorney fees actually incurred in connection with the sale of the property following default.

[5] The payoff amount provided in the letter was $993,300.13.

proceeds from GAA under the Sale Under Power of Deed. Gibson reasons that GAA was not entitled to rely on the Modification Agreement to calculate the amount that it was due because the document was not recorded.[6] Consequently, the original security deed governed the sale, and under the terms therein, there would have been excess proceeds to which Gibson would have been entitled because the attorney fees would have been significantly less. We disagree.

The bona fide holder of a security deed executed before the first material was furnished, and therefore necessarily prior to the recording of the materialman's claim of lien, will take priority over the lien, even if the security deed itself was not recorded until after the first material was supplied.[7] In the instant case, the security deed was filed in 2005, before Gibson's lien.

> A security deed, like any other deed, may be corrected or modified by a new deed or by a subsequent instrument in the form of a modification agreement, changing the terms of the indebtedness, the description of the property conveyed, the designation of the parties or the execution or attestation. The cancellation of the old security deed and the execution of a new one between the same parties may have the effect of a novation, so as to promote junior liens to superior rank, but *a modification agreement will not have such an effect where the original security deed is not cancelled.*[8]

Here, the Modification Agreement did not cancel the original security deed nor was a new security deed executed. Accordingly, the security deed did not lose its priority status to Gibson's lien by virtue of the Modification Agreement.[9]

Gibson maintains that the failure to record the Modification Agreement defeats the purpose of the recording statutes, which is to provide notice, and that it was entitled to receive notice of the changes to the security deed. But Gibson has not cited, nor have we

---

[6] Although not challenged by Gibson, we point out, as recognized by the trial court, that the forbearance from proceeding with the foreclosure on May 6 was sufficient consideration for the Modification Agreement. See *Graphic Prep v. Graphcom*, 206 Ga. App. 689, 691-692 (3) (426 SE2d 183) (1992).

[7] *Caldwell v. Northwest Atlanta Bank*, 194 Ga. 370, 375 (1) (a) (21 SE2d 619) (1942).

[8] (Citation and punctuation omitted; emphasis supplied.) *Aetna Cas. &c. Co. v. Valdosta Fed. Sav. &c.*, 175 Ga. App. 614, 617 (2) (333 SE2d 849) (1985).

[9] See *Riverview Condo. Assn. v. Ocwen Fed. Bank*, 285 Ga. App. 7, 8 (2) (a) (645 SE2d 5) (2007) (the distribution of excess proceeds from a foreclosure sale is governed by the security deed). See also *Aetna Cas.*, supra (Georgia law allows the modification of the terms of debt).

found, any authority for the proposition that a loan modification agreement is not valid or enforceable unless it is recorded. Moreover, as a subordinate lienholder, Gibson had notice from the outset that any claims it had against the property conveyed in the recorded security deed could be extinguished by the power of sale contained in the deed because a sale of the property might not generate enough proceeds to pay its claim.[10] In sum, Gibson's claim that it was entitled to excess proceeds fails as does its claim for conversion, because the record shows that there were no excess proceeds, and Gibson has not established otherwise.

Gibson argues that its claim of wrongful foreclosure, which is based on GAA's alleged lack of good faith in conducting the sale, should have proceeded to the jury. However, this claim, too, is premised ultimately upon Gibson's contention that the Modification Agreement had to be recorded, which we have already rejected. Finally, Gibson maintains that a genuine issue of material fact remained as to whether it was entitled to punitive damages. Because Gibson has not shown that there were excess funds, it has no successful underlying claim. Consequently, the claim for punitive damages cannot survive.[11]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 2, 2011.

*Cruser & Mitchell, Andrew R. Diamond*, for appellant.
*Schulten, Ward & Turner, Kevin L. Ward, Jill D. Prussack, Joseph L. Kelly*, for appellees.

---

[10] See *Reid v. Saul*, 146 Ga. App. 264, 265 (246 SE2d 121) (1978).

[11] See generally *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 40 (1) (643 SE2d 324) (2007); *Benefit Support, Inc. v. Hall County*, 281 Ga. App. 825, 833 (6) (637 SE2d 763) (2006) ("Since [the plaintiff] cannot recover on its underlying tort claims as a matter of law, there can be no punitive damages thereon") (citation, punctuation and footnote omitted). Compare *Decatur Investments Co. v. McWilliams*, 162 Ga. App. 181, 182 (2) (290 SE2d 526) (1982) (punitive damages appropriate where mortgagor wrongfully retained surplus proceeds after wrongfully foreclosing on property).