**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0407. MCINTYRE v. MOSS.

REESE, Judge.

Jennifer McIntyre appeals from the grant of summary judgment entered in favor of Jeffrey Moss, as Trustee of the "Louis H. Moss Living Trust" ("Trust") and as Power of Attorney ("Appellee") in the Appellee's declaratory judgment action. McIntyre argues on appeal that the trial court erred by entering a sua sponte ruling that, as a result of an "in terrorem" clause in the Trust and McIntyre's challenge to the validity of the Trust, McIntyre had forfeited all of her interests and rights under the Trust. For the reasons set forth infra, we vacate the judgment and remand the case for further proceedings.

Construed in the light most favorable to McIntyre, as the nonmoving party,[1] the record shows the following facts. In November 2015, the Appellee filed a verified declaratory judgment complaint against McIntyre, alleging that, in March 2000, Louis H. Moss ("Grantor") executed the Trust, naming himself (the Grantor) as the original trustee; his wife, Theresa Moss, as the successor trustee; and the Appellee as alternate successor trustee. In March 2000, the Grantor also executed a will, a financial power of attorney, and a durable power of attorney for health care, appointing Theresa Moss as executor of the will and granting her powers of attorney and the Appellee as the alternate executor with powers of attorney. The complaint further alleged that Theresa Moss passed away in 2013, and that, in 2014, the Grantor resigned as trustee and appointed the Appellee.

According to the complaint, while the Grantor was living at home with his daughter (McIntyre) and her husband, the couple failed to provide proper care for the Grantor and withdrew funds from the Grantor's bank accounts for "undisclosed purposes" instead of for his care. The Appellee alleged that, after the Grantor moved to a senior living facility in September 2015, McIntyre and her husband continued to

---

[1] See *Schinazi v. Eden*, 338 Ga. App. 793 (792 SE2d 94) (2016).

live in the Grantor's house "for free" and were "depleting [the Grantor's] bank accounts and social security checks for their own personal benefit."

In his Prayer for Relief, the Appellee requested that the court declare that he was the trustee of the living trust and the Grantor's financial power of attorney and durable power of attorney for health care. The Appellee further requested the trial court to declare that he was therefore "authorized to do whatever [was] necessary to preserve the trust assets" and "to do whatever [was] necessary" for the Grantor's financial benefit and to provide for his health care needs. The Appellee also requested attorney fees and an accounting of all funds that McIntyre had withdrawn from the Grantor's accounts since 2013.

Attached to the complaint were several exhibits: (A) a "Declaration of Trust[,]" allegedly made by "Louis H. Moss" on March 8, 2000, and amendment; (B) a "Last Will and Testament[,]" allegedly for Louis H. Moss[,]" executed March 8, 2000, with a self-proving affidavit; (C) a "Financial Power of Attorney"; (D) a notarized "Durable Power of Attorney for Health Care"; and (E) a letter dated May 14, 2014, in which, according to the complaint, the Grantor resigned as trustee and appointed the Appellee as successor. Although the verified complaint references the exhibits,

it does not specifically state that they are true and correct copies of the documents they purport to be.

McIntyre filed a verified answer, in which she "admit[ted] that her parents, [the Grantor] and Theresa L. Moss, created a trust through which [McIntyre] was to benefit," but stated that she was "without knowledge sufficient to admit or deny the validity of the trust document attached as Exhibit 'A'" to the complaint. In a counterclaim, McIntyre alleged that the Appellee had "used undue influence, deceit[,] and trickery to gain appointment as the Trustee"; used the trust document and "bully tactics" to place the Grantor in an assisted living facility and to isolate him from family, friends, and familiar surroundings; and cut off her financial support, contrary to the Grantor's wishes. In her prayer for relief, McIntyre sought, inter alia, an accounting of the assets of the Grantor and the Trust, declarations voiding the Appellee's claims to the titles of trustee and power of attorney, declaring the Grantor the valid trustee, and declaring that any asset transfers the Appellee had made as trustee were void. Alternatively, McIntyre requested, inter alia, that the court remove the Appellee as trustee on the grounds that he violated his fiduciary duties and position of trust.

4

McIntyre also filed an emergency motion for an order granting unimpeded visitation between the Grantor and persons of his choosing and unimpeded compliance with the "Bill of Rights for Residents of Long-Term Care Facilities" ("Bill of Rights").[2]

In March 2016, McIntyre filed a motion to strike certain portions of affidavits attached to the Appellee's response to her emergency motion. Meanwhile, the trial court denied the emergency motion and referred the entire case to mediation.

However, in April 2016, the Appellee filed a motion to quash a subpoena for the Grantor to appear for a deposition and for the Grantor and non-parties to produce certain documents. The Appellee asserted that McIntyre was engaging in abusive discovery in retaliation for having to participate in mediation. The Appellee also sought a protective order. On May 10, 2016, the trial court held a hearing that had been scheduled to address McIntyre's motion to strike and "any other pending ripe motions[.]"

On August 17, 2016, the trial court entered two separate orders. In the first order entered on the docket ("First Order"), the trial court found that the Appellee was the Grantor's financial power of attorney and durable power of attorney for health

_____

[2] See OCGA § 31-8-100 et seq.

5

care, and that the Appellee became the trustee of the March 8, 2000 living trust when the Grantor resigned as trustee in 2014. The court noted that McIntyre had raised the issue of what right she had to continue living on the property owned by the Grantor. The court found that she "ha[d] no title or claim to the property while [the Grantor was] living[,]" and that the Appellee, as the trustee and financial power of attorney, had the right, inter alia, to evict McIntyre and any other residents of the Grantor's home in order to sell the property to care for the Grantor.

The trial court found further that the Appellee had not violated or breached any of his duties and responsibilities as the trustee, financial power of attorney, and durable power of attorney for health care, and that he had not violated any of the Grantor's rights under the Bill of Rights. The trial court also set the terms and schedule of visitation for the Grantor's relatives and other visitors.

In a separate order entered the same day ("Second Order"), the trial court granted the Appellee's motion to quash the subpoena and for a protective order, ruling that there would be "no discovery or deposition of and/or through [the Grantor]." The trial court ordered further that McIntyre not use any of the Grantor's social security income, which was to be solely reserved for the Grantor's care and needs, to be managed by the Appellee, as his trustee and power of attorney.

6

Six months later, the Appellee filed a motion for summary judgment on McIntyre's counterclaim. In his supporting brief, the Appellee provided a "statement of facts[,]" which repeated certain allegations in his complaint, i.e., that the Grantor had executed the Trust in March 2000 and that the Appellee had later been appointed trustee. The brief also noted generally that, "[t]he Trust provided [for] the children, [the Appellee] and [McIntyre,] to split equally the assets of the estate upon [the Grantor's] death."

The Appellee recited the trial court's findings from the First Order, and argued that the trial court's August 17, 2016 orders entitled him to summary judgment in his favor and to dismissal of McIntyre's counterclaims. According to the Appellee:

> [b]ased on [the trial court's orders entered] on August 17, 2016, [the trial court] already ruled and adjudicated in favor of [the Appellee's] request for declaratory judgment. In addition, [the trial c]ourt's Orders also addressed all of the frivolous allegations set forth in [McIntyre's] Answer and Counter-Claim. Therefore, summary judgment should be granted in favor of [the Appellee] as to his request to dismiss as a matter of law [McIntyre's] Answer and counter-claim.

The Appellee did not raise the issue of the "in terrorem" clause in either the motion for summary judgment or supporting brief.

McIntyre voluntarily dismissed her counterclaims without prejudice, but did not otherwise respond to the summary judgment motion.

More than a year later, the trial court granted summary judgment in favor of the Appellee. The court ruled that the Trust contained an "in terrorem" (or "no contest") clause that provided:

> The distributions designated in this trust are intended to be in lieu of any other claims, of whatever nature and whether arising by statute or otherwise, by any taker hereunder, and *any taker who asserts any other claim or contests this trust shall forfeit all interest in any property, income or other benefit to him/her. Any property, income or other benefit forfeited by the operation of this paragraph shall be distributed as part of the net proceeds of this living trust as if the taker asserting the claim did not survive.*[3]

The trial court concluded that, "[a]s a result of the in terrorem clause in the Trust and McIntyre's challenge to the validity of the Trust, she has forfeited all interest and rights under the Trust. McIntyre is not entitled to any real or personal property [or] any distribution of funds, or [to] have any other rights under the Trust." Finding there was no genuine issue of material fact that it could resolve, the court granted the Appellee's motion for summary judgment. This appeal followed.

---

[3] (Punctuation omitted; emphasis supplied in trial court's order.)

"Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] "On appeal from the grant of summary judgment, we conduct a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[5] With these guiding principles in mind, we turn now to McIntyre's specific claims of error.

1. In related arguments, McIntyre contends that the trial court violated her rights to due process and equal protection of the laws when it entered a summary judgment declaring that she had forfeited her rights under the Trust. Specifically, she argues that the Appellee did not raise the issue of whether she had violated the in terrorem clause in his motion for summary judgment. Thus, she was never provided with notice that the court was going to consider the issue, and a hearing was never conducted so that she could contest the Appellee's allegation.

---

[4] *Forsyth County v. Waterscape Svcs., LLC*, 303 Ga. App. 623 (694 SE2d 102) (2010) (citations and punctuation omitted).

[5] *Schinazi*, 338 Ga. App. at 793 (punctuation and footnote omitted).

9

The Appellee responds that "prior to entry of the [summary judgment] Order, [the Appellee] submitted a proposed order, with a copy via U.S. Mail to Appellant, which included a finding that [McIntyre] had challenged the validity of the Trust by alleging that [the Appellee] was not the proper Trustee and, alternatively, that he had abused his fiduciary duties in that role." The Appellee does not cite to anything in the record to support this statement,[6] and we have found nothing. Any such proposed order or proof of service thereof is not properly before this court. "[W]e do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court."[7]

The Appellee also responds that "the finding that Appellant had violated the 'no contest' clause[ ] was already established in the trial court's Order entered on

---

[6] See Court of Appeals Rule 25 (b) (1) ("Part One [of the brief of appellee] shall point out any material inaccuracy or incompleteness of appellant's statement of facts and any additional statement of facts deemed necessary, plus citations to additional parts of the record or transcript deemed material. Failure to do so shall constitute consent to a decision based on the appellant's statement of facts. Except as controverted, appellant's statement of facts may be accepted by this Court as true.").

[7] *Wachovia Ins. Svcs. v. Fallon*, 299 Ga. App. 440, 446 (3) (a), n. 3 (682 SE2d 657) (2009) (citation and punctuation omitted).

August 17, 2016, from which [McIntyre] had not appealed." Specifically, the Appellee states that, "[i]n the August 17, 2016 Order, the trial court ruled in favor of [the Appellee] on all issues that are material to the case, as the trial court rejected the challenge to the validity of the trust and rejected the argument that [the] Appellee was abusing his position as Trustee."

In fact, in the August 17, 2016 order, the trial court made no finding regarding the validity of the Trust or on the issue of whether McIntyre had violated the "no contest" clause.[8] Further, the Appellee does not contend that the trial court included

[8] We note that the record on appeal does not include an authenticated copy of the Trust itself. As noted above, the verified complaint merely referenced the exhibits attached to the complaint; the Appellee did not aver that, based on his personal knowledge, they were true and correct copies of what they purported to be. See OCGA §§ 24-9-901 (a) ("The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); 24-9-901 (b) (1), (10) ("By way of illustration only, and not by way of limitation, [one] example[ ] of authentication or identification conforming with the requirements of this Code section [is t]estimony of a witness with knowledge that a matter is what it is claimed to be; or [a]ny other method of authentication or identification provided by law."); *Fannie Mae v. Harris*, 343 Ga. App. 295, 299 (1) (807 SE2d 75) (2017) ("A party seeking to authenticate a document under Rule 901 is required to present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be. Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the factfinder.") (citations and punctuation omitted).

In the summary judgment order, however, the trial court states that at the May 10, 2016 hearing, the Appellee presented evidence that was not rebutted by McIntyre,

additional findings in any oral pronouncement made at the May 10, 2016 hearing,[9] nor does he make any argument that such oral rulings, if they existed, would be controlling.[10] Thus, we conclude that the Appellee's assertion that the trial court had already made the findings at issue is not supported by the record.

2. We now turn to the issue of whether the trial court erred in ruling on an issue in its summary judgment order that had not been raised by the Appellee and without providing notice and a hearing for McIntyre to respond.

---

and that, based on that evidence, the court "ruled in favor of [the Appellee] declaring certain rights under the Trust and Powers of Attorney." Because no transcript of the hearing is included in the record on appeal, we assume that the trial court relied on a true and correct copy of the Trust. See *Mashburn Constr. v. CharterBank*, 340 Ga. App. 580, 583 (2) (798 SE2d 251) (2017) ("A party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed. It cannot be presumed from a silent or non-existent transcript of a hearing below that a proper objection was interposed.") (punctuation and footnote omitted).

[9] As discussed in n. 8, supra, the transcript of this hearing is not part of the record on appeal.

[10] See *Black v. Ferlingere*, 333 Ga. App. 789, 790-791 (1) (777 SE2d 268) (2015) ("A trial court's oral pronouncement is not a judgment until it is put in writing and entered as the judgment. Although a trial court's oral pronouncements on the record may provide insight on the intent of its subsequent written judgment, discrepancies between the two pronouncements must be resolved in favor of the written judgment. Thus, the trial court's oral statements on the record were not binding.") (citation and punctuation omitted).

"Nothing in the applicable law places a burden on the nonmovant to respond to issues which are not raised in the motion for summary judgment."[11]

> A trial court is authorized to grant a summary judgment sua sponte, but such a ruling must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. The crucial point is to insure that the party against whom summary judgment is sought has had a full and final opportunity to meet and attempt to controvert the assertions against him.[12]

We hold that, prior to the trial court's grant of summary judgment, McIntyre did not have notice or a "full and final opportunity" to respond to any assertion that she had forfeited all her interests and rights under the Trust.[13] "The notice

---

[11] *Forsyth County*, 303 Ga. App. at 629 (1) (citation and punctuation omitted).

[12] *Carroll v. Finova Capital Corp.*, 265 Ga. App. 517, 519 (594 SE2d 720) (2004) (citations and punctuation omitted).

[13] See *Aycock v. Calk*, 222 Ga. App. 763, 764 (476 SE2d 274) (1996); see also Uniform Superior Court Rule 6.5 ("Upon any motion for summary judgment[,] there shall be annexed to the notice of motion a separate, short and concise statement of each theory of recovery and of each of the material facts as to which the moving party contends there is no genuine issue to be tried.").

13

requirement is clear, simple to meet, and necessary. We should not muddy the waters by assuming a party had notice where the record shows none was given."[14]

Based on the foregoing, we vacate the summary judgment order and remand so that McIntyre may be given such fair notice and an opportunity to respond.[15]

*Judgment vacated and case remanded. Miller, P. J., and Rickman, J., concur.*

---

[14] Id.

[15] See id.; see also USCR 6.3; *Holladay v. Cumming Family Medicine*, 348 Ga. App. 354, 355 (823 SE2d 45) (2019) (nonmovant had a right to rely on hearing date until the trial court vacated or withdrew a rule nisi setting a summary judgment hearing, regardless of whether the nonmovant responded to the motion or the movant actually filed a request for hearing).