**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**June 27, 2025**

# In the Court of Appeals of Georgia

A25A0438. ROSWELL PROPERTIES LLC LTD v. FIRST AMERICAN SERVICES LLC.

BARNES, Presiding Judge.

This appeal arises from a quiet title action filed by First American Services, LLC ("First American"), as Trustee of the 1154 Magnolia Trust, seeking cancellation of a 1989 security deed held by Roswell Properties, LLC, LTD ("Roswell") on certain real property located in Bibb County, Georgia. The Superior Court of Bibb County granted summary judgment in favor of First American, concluding that title to the property had reverted to the property owner before the security deed was assigned to Roswell, rendering Roswell's security deed unenforceable. The court also granted summary judgment to First American and denied summary judgment to Roswell on Roswell's counterclaim asserting a lien based on a tax redemption payment. For the

reasons set forth below, we reverse both the grant and denial of summary judgment on the quiet title claim, vacate both the grant and denial of summary judgment on the tax lien counterclaim, and remand the case for proceedings consistent with this opinion.

> To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. When a plaintiff moves for summary judgment, he has the burden of establishing the absence or non-existence of any defense raised by the defendant. When a defendant moves for summary judgment, he has the burden of either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Edwards v. Dixon*, 370 Ga. App. 715, 716 (1) (899 SE2d 249) (2024).

The relevant facts are not in dispute. In 1989, Ernest O. Wiggins borrowed $25,000 from Security National Bank, and in connection with that loan he executed a "Master [Promissory] Note" with a 1990 maturity date, and a security deed to real property in Bibb County. The deed expressly secured

2

the indebtedness [t]herein described, any extensions or renewals thereof in whole or in part, whether evidenced by new notes, extension agreements or otherwise, the obligation to pay attorney's fees as provided in any such note or agreement and also any other advances which may be made by Grantee to or on behalf of Grantor and any indebtedness or liability of Grantor to Grantee of whatever kind and however the same may be created, specifically including, but not being limited to, any liability as endorser, surety, guarantor, or indemnitor.

At that time, OCGA § 44-14-80 provided for an automatic reverter of title to land described in a security deed after 20 years from the later of the maturity date of the debt or the recorded written renewal of the debt, but in 1994, that reversionary period was reduced to seven years.[1]

The deed was subsequently modified multiple times, changing the amount owed and extending the maturity dates. Each modification was separately recorded, and several modifications were noted on the face of the deed. In 1995, the deed was

---

[1] Under circumstances not applicable here, the reversion period under the current version of the statute is 20 years. See OCGA § 44–14–80 (a) (1), (2); see also *Matson v. Bayview Loan Servicing*, 339 Ga. App. 890, 891 (1) (795 SE2d 195) (2016) ("In 1994, OCGA § 44-14-80 was modified to provide for an automatic reverter of title to land described in a security deed after seven years from the maturity date of the debt secured thereby or 20 years if the parties so expressly agree in writing in the security deed.") (citation and punctuation omitted).

modified to extend the maturity date to November 20, 1998. In 2002, it was modified to secure a loan in the amount of $80,330.00, which would mature on or before October 30, 2002. In 2003, the deed was modified to secure the sum of $195,837.39, due on or before July 5, 2006. The last modification, which occurred in 2009, secured a loan of $139,198.74 due on or before November 11, 2012. Notably, all of the modifications included clauses indicating that, aside from the changes to the amount owed and the maturity dates, the 1989 security deed remained in effect.

In 2020, Cadence Bank, N. A., as successor-in-interest to State Bank and Trust Company, assignee of the Federal Deposit Insurance Corporation as receiver for Security National Bank, assigned the deed to JTS Capital 3 LLC ("JTS Capital"), which recorded the assignment on March 2, 2020. In March 2022, JTS Capital assigned the deed to Roswell, the appellant herein, and the assignment was recorded on April 4, 2022. Meanwhile, Wiggins died in 2021, and First American subsequently purchased the property from Wiggins's heirs via quitclaim deeds in July and August 2022.

First American filed a quiet title action seeking a ruling that it was the fee simple owner of the property on the theory that title to the property reverted to Wiggins on

November 22, 2019, seven years after the maturity of the 2009 modification, thus, the assignments to JTS and Roswell in 2020 and 2022 had no legal effect. Roswell filed its answer, counterclaim, and third-party complaint in which it denied First American's contentions and asserted in its counterclaim that it was entitled to a lien for paying $67,434.91 to redeem the property from a 2022 tax foreclosure action.[2] First American moved for summary judgment on its quiet title claim, arguing that whereas a renewal of the original debt would have triggered the 20-year reversionary period under the old statute, the 2009 modification was a new contract subject to the seven-year reversionary period in the current version of OCGA § 44-14-80. First American also sought summary judgment on Roswell's counterclaim, arguing that Roswell was not entitled to a tax lien because it was not an interested party, and even if it were, First American was a protected bona fide purchaser for value because the lien was not recorded. Roswell filed a cross-motion for summary judgment, arguing that each modification was a renewal of the 1989 deed subject to the 20-year reversionary period in the former version of OCGA § 44-14-80, with the result that

---

[2] Roswell's third-party complaint was against parties not involved in this appeal.

title does not revert until November 11, 2032. Roswell also sought summary judgment on its tax lien counterclaim.

The trial court ruled in favor of First American on all claims, finding that the 2009 modification was a novation and a renewal of the debt that created a new contract subject to the seven-year reversionary period in the current version of OCGA § 44-14-80, and concluding that title to the property reverted to Wiggins's heirs on November 11, 2019, thus rendering Roswell's security deed unenforceable. Additionally, the trial court denied summary judgment to Roswell and granted it to First American regarding the tax lien counterclaim. Roswell then filed the instant appeal.

1. In related enumerations of error, Roswell contends that the trial court erred by denying its motion for summary judgment and granting summary judgment to First American on the quiet title claim. We agree.

The law in effect when a security deed is originally executed governs the instrument and any subsequent renewals. See *Drake v. Barrs*, 225 Ga. 597, 599-600 (2) (170 SE2d 684) (1969) (security deed executed in 1927 and renewed in 1950 was not subject to renewal periods contained in versions of Ga. Code Ann. § 67-1308 enacted

in 1941 and 1953); *Todd v. Morgan*, 215 Ga. 220, 221-222 (2) (109 SE2d 803) (1959) (the retroactive application of predecessor statute, Ga. Code Ann. § 67-1308, to impair rights that vested under a previously executed security deed, was an unconstitutional impairment of contract). However, if the agreement is subsequently modified such that it becomes a novation, the new agreement is necessarily governed by the law in effect at the time of its creation. See *Aycock v. Martin*, 37 Ga. 124, 136 (1867) ("[T]he binding force and coercive power of the law applicable to the contract as the same existed at the time it was made, constitutes the obligation of the contract[.]") (emphasis omitted).

When the 1989 security deed was executed, former OCGA § 44-14-80 (a) provided that title to property used to secure a debt reverted to a grantor or his heirs "at the expiration of 20 years from the maturity of the debt or debts." However, the statute also provided that

> [i]f the grantee or his personal representatives, heirs, successors, or assigns, or any one of them if more than one, or an officer of a corporation having an interest shall, at any time before the title reverts . . . *make and cause to be recorded upon the record of the conveyance or elsewhere in the public records, with a notation of the place of record of the renewal on the record of the conveyance* or, if not recorded, upon the

conveyance, a written renewal of the debt or debts secured or the part thereof which are not fully paid and are not barred, which renewal shall be signed by the original grantor or his heirs, personal representatives, or successors in title to the real estate conveyed and shall be dated, *the conveyance and record thereof shall remain of full force and effect and the title shall not revert for an additional period of 20 years from the date of the renewal unless the debt or debts are paid sooner.*

(Emphasis supplied.) OCGA § 44-14-80 (b) (1989).

Here, the original note had a maturity date of January 17, 1990. Thus, title would have reverted 20 years later. However, as evidenced by the recorded security deed modifications, the maturity date was extended several times, with a final maturity date of November 11, 2012. Hence, although neither the original note nor the note modifications were recorded,[3] the deed modifications were governed by the 20-year

---

[3] Relying on *Minor v. Neely*, 247 Ga. 147, 148 (273 SE2d 853) (1981), First American argues that a note modification, rather than a security deed modification, must be recorded to extend the reversion period. But First American reads *Minor* too narrowly. The issue in *Minor* was whether security deeds executed in 1952 and 1957 were renewed by subsequent promissory notes that were not recorded. The Supreme Court held that the trial court "did not err in ruling that a promissory note, which is secured under the dragnet clause of a previously-executed security deed, must be entered of record . . . in order to prevent title from reverting to the grantor at the expiration of 20 years from the maturity of the original debt" and disapproved of a previous case to the extent it suggested otherwise. See id. Importantly, the renewal instrument at issue in *Minor* was a promissory note, and there is no mention in that

reversion period in the former version of OCGA § 44-14-80 that was in effect when

the original security deed was executed, with the result that title to the property would

not revert until November 11, 2032.[4] See *Bell v. Freeport Title & Guaranty*, 355 Ga.

---

case of whether a subsequent security deed was prepared or recorded. Thus, viewed in context, the Supreme Court's holding in *Minor* stands only for the unremarkable proposition that even if a written renewal is made, it must be recorded to extend the reversion period of a security deed. See generally *Schoicket v. State*, 312 Ga. 825, 832 (1) (865 SE2d 170) (2021) ("[A] decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises.") (citation and punctuation omitted). Such a conclusion is bolstered by the plain language of the statute. "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). Here, both versions of OCGA § 44-14-80 at issue specify that a "written renewal" extends the reversion period, but there is nothing in either statute suggesting that a "written renewal" requires a recorded promissory note modification. Had the legislature intended to limit the term in this manner, it would have done so explicitly. Furthermore, the 2009 modification described the note, including the date the loan was made, the payment schedule, and the final payment date, and "[First American] has advanced no viable reason, and there is none, that the terms of a note may not be so incorporated." *United Bank v. West Central Ga. Bank*, 275 Ga. App. 418, 420 (620 SE2d 654) (2005). Cf. *MPP Investments v. Cherokee Bank, N.A.*, 288 Ga. 558, 564 (5) (707 SE2d 485) (2011) (recorded security deed "with the maturity date clearly set forth" gave purchaser constructive notice of the date of reversion of the title interest).

[4] On appeal, First American contends that the modifications could not be renewals because Georgia law requires intangible recording tax to be paid on a long-term note, which is defined as a note where any part of the principle becomes due more than three years from the date of the note or the security instrument. See OCGA §§ 48-6-60 (3); 48-6-61. But failure to pay intangible recording tax merely bars foreclosure — it does not affect the obligations secured by the security instrument,

App. 94, 98 (2) (a) (842 SE2d 565) (2020). ("[W]here the initial security deed was recorded and the debt's maturity date has been extended and recorded in the public record before the title reverts, the reversion date is extended for an additional period . . . according to the appropriate reversion period stated in subsection (a) of [OCGA § 44-14-80] from the date of the renewal.") (citation and punctuation omitted).

Although the trial court determined that the 2009 modification amounted to a renewal of the debt, it nevertheless concluded that the seven-year reversion period applied because the changes to the note's terms constituted a novation.

> In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) *the extinguishment of the old contract*, [and] (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation.

(Citation and punctuation omitted; emphasis supplied.) *Georgialina Enterprises v. Frakes*, 250 Ga. App. 250, 253 (551 SE2d 95) (2001). "As with any contract, a meeting of the minds is an essential element of a valid and binding novation. And significantly,

---

and "such instrument shall continue to secure the indebtedness and other obligations secured thereby and shall continue to encumber the collateral described therein." OCGA § 48-6-77 (a). Explained another way, the failure to pay the tax, even if due, does not transform a renewal into a brand new agreement.

the question of whether the parties mutually intended a novation is ordinarily a question reserved for the trier of fact." (Citations and punctuation omitted.) *Asgharneya v. Hadavi*, 298 Ga. App. 693, 696 (1) (680 SE2d 866) (2009). Moreover,

> [a] security deed, like any other deed, may be corrected or modified by a new deed or by a subsequent instrument in the form of a modification agreement, changing the terms of the indebtedness, the description of the property conveyed, the designation of the parties or the execution or attestation. The cancellation of the old security deed and the execution of a new one between the same parties may have the effect of a novation, so as to promote junior liens to superior rank, but *a modification agreement will not have such an effect where the original security deed is not cancelled*.

(Citation and punctuation omitted; emphasis in original.) *Gibson Constr. Co. v. GAA Acquisitions I*, 307 Ga. App. 698, 700 (705 SE2d 913) (2011).

> In the instant case, the 2009 "Modification of Deed to Secure Debt" provided:

> For value received, Grantor and Lender agree to modify the original Security Instrument. Grantor and Lender agree that *this Modification continues the effectiveness of the original Security Instrument*. The Security Instrument was given to secure the original debts and obligations . . . that now have been modified. Together with this Modification, the Security Instrument now secures the following debts and all extensions, renewals, refinancing, modifications and replacements. . . . Loan in the amount of

11

$139,198.74 dated 11/30/09 with 35 payments of $1518.01 beginning 01/11/10 and due each month on the 11th with final payment due on or before 11/11/12.

(Emphasis added). The 2009 modification also included a clause titled "**CONTINUATION OF TERMS**," which stated: "Except as specifically amended in this Modification, all terms of the Security Instrument remain in effect." Because the modification expressly continued the effectiveness of the original security instrument, rather than canceling it, the trial court erred by concluding that the 2009 modification amounted to a novation.[5]

---

[5] Our decision in *Gilbert v. Cobb Exchange Bank*, 140 Ga. App. 514, 514 (231 SE2d 508) (1976), relied on by the trial court, does not compel a different result. In *Gilbert*, a surety to a promissory note argued that the addition of $600 to the principal of a guaranty agreement for $3,100, "without his consent," constituted a novation which operated to discharge him from the agreement. Id. We agreed, applying the former version of OCGA § 10-7-21, which provided that "[a]ny change in the nature or terms of a contract is called a 'novation' and that "such novation, without the consent of the surety, discharges him." Notably, by its own terms, OCGA § 10-7-21 specifically applies to surety contracts. In the instant case, however, there is no indication that Wiggins was anything other than the principal, and in any event, he agreed to the modifications. See generally OCGA § 10-7-1 ("The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal, the principal in either instance remaining bound therefor."). Thus, *Gilbert* is distinguishable.

12

Accordingly, because the uncontroverted evidence of record shows that title to the property had not reverted under the security deed, the trial court erred by denying summary judgment to Roswell and granting summary judgment to First American on the quiet title claim, and we therefore reverse.

2. Regarding the tax lien counterclaim, Roswell argues that the trial court erred by denying its motion for summary judgment and by granting summary judgment to First American. In this regard, the trial court found that Roswell was not an "interested party"[6] entitled to redeem the property and obtain a tax lien because the redemption payment was made by "The Cadle Company," and no evidence was offered to show how The Cadle Company had an interest in the property. The court

---

[6] Under OCGA § 48-4-80 (a),any "interested party" has the right to redeem a property from a tax sale by paying the delinquent tax amount before the sale occurs. If a non-owner interested party pays for this redemption, they are granted a lien on the property that holds the same priority as the original tax lien. See OCGA § 48-4-80 (c). Relevant to this case, an "interested party" is defined as someone who (A) has a recorded interest in the property according to a title search; (B) has filed notice of his or her interest in accordance with OCGA § 48-3-9, which concerns notice to the property owner and owner of a security deed or mortgage before levy; or (C) has an interest that can be reasonably identified from the petitioner's or county's records. See OCGA § 48-4-77 (1) (A)-(C).

also stated that "[e]ven if Cadle was an interested party, Roswell Properties has not shown any assignment of such a lien from Cadle to itself."

Roswell argues that it was not given proper notice or opportunity to address this issue in the trial court. Indeed, the record reflects that First American only argued below that Roswell was not an interested party because the security deed reverted before Roswell paid the redemption tax, and that even if Roswell was an interested party, First American is a protected bona fide purchaser because Roswell did not record the tax lien. In addition, the trial court neither referenced this issue in the hearing nor asked the parties to brief the issue.

> Nothing in the applicable law places a burden on the nonmovant to respond to issues which are not raised in the motion for summary judgment. A trial court is authorized to grant a summary judgment sua sponte, but such a ruling must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. The crucial point is to ensure that the party against whom summary judgment is sought has had a full and final opportunity to meet and attempt to controvert the assertions against him.

(Citations and punctuation omitted.) *McIntyre v. Moss*, 350 Ga. App. 723, 729-730 (2) (830 SE2d 262) (2019). Because Roswell did not have notice or a full and fair opportunity to respond to any assertion that it was not responsible for the tax payment, we vacate the grant of summary judgment to First American on Roswell's counterclaim and remand so that Roswell may be given fair notice and an opportunity to respond. See id. Likewise, because the trial court's order denying summary judgment neither addressed Roswell's equitable estoppel argument, nor First American's argument that it was a protected bona fide purchaser for value because the lien was not recorded, we vacate the trial court's denial of summary judgment on the counterclaim and remand for the trial court to consider the parties' alternative arguments in the first instance. See *Earls v. Aneke*, 350 Ga. App. 455, 460-461 (1) (829 SE2d 661) (2019) ("To be sure, there are instances when this Court will review a record and determine that a summary judgment ruling was right for a reason other than the one given by the trial court, but it is improper for us to consider whether the trial court was 'wrong for any reason.'") (citation omitted).

*Judgment reversed in part, vacated in part, and case remanded with direction. Brown and Watkins, JJ., concur.*